## LOEB vs. THE STATE OF GEORGIA.

1. Section 4540 (a) of the Code *ex vi termini* makes all persons connected with the sale or retailing of spirituous, intoxicating or malt liquors responsible whenever a minor is furnished therewith, unless they have written authority from the parent or guardian of such minor; and it matters not whether the proprietor sells or furnishes the liquor directly by himself, or it is furnished by another in his employment; whether he was present or not, or knew of the fact, or consented to it, he is, under this act, guilty of criminal negligence, and is, on that account, liable to prosecution. His offense is complete whenever it is shown that intoxicating drink was sold or furnished to a minor by any one acting in his place of business in any capacity whatever, either as clerk, bar-tender or otherwise.

(*α.*) Though the offense is not stated in the indictment by employing all the terms and language used in the section of the Code on which it is based, but only a portion of them, yet it does set forth the offense so plainly that its nature may be easily understood by the jury, and is sufficiently technical and correct. It is not necessary, in such an indictment, to allege a *scienter*.

(*b.*) Similar criminal enactments compared and contrasted.

2. It furnished no ground of objection to the indictment that the name of the clerk who, it was alleged, made the sale was not set out in the indictment.

3. That a grand juror is more than sixty years of age does not render him incompetent or invalidate an indictment found by a grand jury of which he is a member.

4. Section 3938 of the Code renders petit jurors incompetent to serve more than four weeks in one year, but there is no such restriction as to grand jurors. The act of 1833, disqualifying them from acting as talesmen for that reason, was repealed by the act of December 22, 1884.

5. If it was error not to exclude the testimony of the collector of internal revenue that he issued a retail license to a firm of which the defendant was a member, it was immaterial error, as that fact was fully established by other testimony.

6. The private instructions of the proprietors to the clerks and barkeepers in relation to selling to minors were incompetent and irrelevant testimony, and were properly rejected from evidence.

7. The verdict was demanded by the law and evidence.

November 17, 1885

Criminal Law. Liquor. *Scienter.* Indictment. Minors. Jury and Jurors. Evidence. Before Judge WILLIS. Muscogee Superior Court. May Term, 1885.

Reported in the decision.

McNeil & Levy ; W. A. Little, for plaintiff in error.

Thomas W. Grimes, solicitor general, by John Peabody, for the state.

Hall, Justice.

This was a special presentment founded on section 4540(a) of the Code, which declares that, " No person or persons, by himself or another, shall sell, or cause to be sold or furnished, or permit any other person or persons in his, her or their employ to sell or furnish any minor or minors, spirituous or intoxicating or malt liquors of any kind, without first obtaining written authority from the parent or guardian of such minor or minors, and such person or persons so offending shall, on conviction, be punished as prescribed in section 4310 of the Code."   There were two counts in this indictment; the first charged the defendant with selling spirituous, intoxicating and malt liquors to a minor without the written authority of his father; the second with selling, by his clerk, to the minor spirituous liquors without the written authority of his father. Upon arraignment and before pleading to the merits, the defendant filed two special pleas and a demurrer to the indictment, each of which was overruled and disallowed.

The pleas set forth, first, that each of six of the grand jurors named therein, who returned the presentment, were over sixty years of age, and were incompetent to act in that capacity; and, secondly, that Klink, another of the body, had served for more than four weeks in the year 1885 at the time of, and previous to, the finding of the presentment. The demurrer to the first count of the indictment was general, and special as to the second, and the grounds set out were:

(1.) That the defendant was not thereby charged with any criminal act committed by himself.

(2.) That it charged him with the commission of a crime by another person, and it did not show that he had any connection therewith or knowledge of the same.

(3.) It is charged that, by his clerk, he sold spirituous liquors to a minor, but the name of the clerk, or person selling the liquors, is not stated, so as to enable him to prepare for and meet the charge.

(4.) It alleged that he did sell spirituous, intoxicating and malt liquors to said minor by his clerk, but did not charge that he caused or permitted said clerk to sell or furnish the same to said minor.

This demurrer, upon argument, was adjudged insufficient.

The issue formed upon the plea of not guilty was found in favor of the state, and upon his conviction the defendant moved, on various grounds, for a new trial, which was refused.

1. The first ground alleges error in overruling the demurrer, and this, in connection with certain charges given and others refused by the judge, as set out in the fifth, sixth, seventh and eighth grounds of the motion, presents the material questions made by this record. The object and purpose of the general assembly, in the enactment of the law upon which the presentment is founded, are thus brought before the court for determination. We think it best to deal with this question in its broadest and most general aspect.

The Spartans, it is said, were in the habit of making their helots drunk, and, while in that condition, exhibiting them to their sons, in order to disgust them with this vice. This rule was reversed by our tippling house keepers and dram sellers, who, previous to the passage of this act, seem to have been in the habit of alluring the youth of the state into their establishments, that they might create in them, as soon as they had cast their swaddling clothes, a raging thirst and uncontrollable appetite for strong drink, in order to supply themselves with customers when these boys attained their majority. It was doubtless the determination of the legislature effectually

to suppress this pernicious practice, and we think they succeeded in that purpose by the enactment of the law in question, if it can, as it should be, faithfully executed. The act *ex vi termini* makes all persons connected with the sale or retailing of spirituous, intoxicating or malt liquors responsible whenever a minor is furnished therewith, unless they have written authority from the parent or guardian of such minor, and it matters not whether the proprietor sells or furnishes the liquor directly by himself, or it is furnished by another in his employment; whether he was present or not, or knew of the fact, or consented to it, he is, under this act, guilty of criminal negligence, and is on that account liable to prosecution. His offense is complete, whenever it is shown that intoxicating drink was sold or furnished to a minor by any one acting in his place of business in any capacity whatever, either as clerk, bartender or otherwise. Such was the view taken by Judge Willis in the charges he gave the jury, and such was the reason which properly influenced him in refusing the defendant's written requests to charge and in overruling his demurrer to the indictment.

We suggest that it would be the better practice to set out in the several counts of the indictment, so varied as to meet the different phases of each case, that the proprietor sold and furnished, or where this was done by another, that he sold and furnished, and caused to be sold and furnished, and permitted such other—being in his employment, as clerk, bar-tender, or in other capacity—to sell and furnish a minor with spirituous liquors, etc., without the written authority of the parent or guardian of such minor. Such full averments would obviate the objections urged to the indictment in this instance, and also those made to the sufficiency of the proof to establish a sale.

The party furnished at the tippling house and retail shop swore simply that he got liquor there on various occasions, without saying that he bought it, and it was

insisted that this did not prove that it was sold to him according to the allegation in the indictment. We think differently; the sale may be inferred from the course of dealing at such places; the presumption is, that when liquor is furnished there, it is for a consideration, and that whether the customer pays cash or not, he becomes liable, at least impliedly, for the price of what is ordered and delivered and consumed upon the spot. It would be going too far to presume that retailing was carried on for the love of the thing, and without any expectation of reaping the profits and gain to be derived therefrom. The strong presumption is the other way, and unless rebutted, it would seem to become conclusive. If the defendant was doubtful upon this point, how easy would it have been to have removed that doubt and to have established the fact upon which his defence rested, by a simple interrogation of this witness. He could and doubtless would have disclosed the terms on which he obtained the liquor, in response to a question propounded for that purpose.

Though the offense is not stated in the indictment by employing all the terms and language, but only a portion of them, used in the section of the Code on which it is based, yet it does set it forth so plainly that its nature may be easily understood by the jury, and this renders it sufficiently technical and correct under the law. Code, §4628. It was not demurrable on any of the grounds taken.

The statutes of Illinois, which inhibit the sale, etc., of · liquor to minors, and that which prescribe the requisites of an indictment, if not identical, are in all respects similar to the sections of our Code upon these subjects. The Supreme Court of that state, in McCutcheon vs. The People (69 Ill., 601; S. C., 1 Hawley's Am. Cr. R., 471), held that, under these statues, it was not necessary to do more than to state the accusation in the language of the act creating the offense; that when the intention is mentioned as an element of the offense created by law, it ought to be alleged; but when it is silent as to motive, no intent

need be averred; and this position is sustained by numerous cases cited in that opinion. It is not necessary in such an indictment to allege a *scienter;* such great strictness and niceties in pleading should only be countenanced when it is apparent that the defendant may be surprised on the trial or be unable to meet the charge; and beyond this, particularity of specifications might furnish a means of evading the law rather than defending against the accusation. Two of the court dissented from this view, holding that, while it was not necessary to aver guilty knowledge in the indictment, under their statutory rule as to the requisites of pleading in cases of offenses created by statute, it was nevertheless necessary to prove such guilty knowledge on the trial, and they came to this conclusion, because their act was copied from the statute of Ohio, to which the courts of that state, previously to its adoption in Illinois, had given a different construction, and that in adopting the act of another state, it was the intent of the legislature of Illinois to adopt it with the construction put upon it by the courts of the state in which it originated. We, however, have not borrowed our legislation upon these subjects from other states, whose courts have placed upon them an interpretation, and are left free to construe them, to carry into full effect what we are satisfied was the purpose of the general assembly in enacting them, which was to save the youth of the state from the temptations and allurements that might otherwise eventuate in tippling, idleness and drunkenness.

It is insisted that such a construction ignores the essential elements that go to make up the definition of a crime or offense, viz., the union or joint operation of act and intention in its commission, or criminal negligence. Code, §4292. That such is generally a correct definition will not be denied; but that is not the question before us, which, accurately stated, is, has the legislature done away with, or modified to any extent, the application of the principle to this particular case—not

whether it has the authority so to do? No one will contend that it has not such authority. There is nothing in the fundamental law that forbids or restrains the exercise of such power. The enactment in hand is by no means exceptional or singular in this respect. There are other instances to be found in our Code where proprietors and others in authority are held criminally liable for the acts or negligence of those in their employment or acting under them; as, for instance, in the running of freight trains on railways on Sunday, the superintendent of transportation of the company, or the officer having charge of the business of transportation of the railroad, is made liable to indictment, and on the trial, it need not be proved who are the persons in charge of the train, but the simple fact of the train's being run on that day shall be sufficient to sustain the indictment and fix the guilt of the defendant. It is expressly provided that the defendant may justify himself by proof that such employés acted in direct violation of his rules and orders. Code, §4578. It is not without significance that the act prohibiting the sale of liquors to minors contains no such provision.

So, where a railroad company fails or neglects to erect posts at points where the law requires the engineer to blow the whistle of the locomotive, the superintendent of the company is declared guilty of a misdemeanor, and is made liable to indictment. Code, §709. In like manner, it is unlawful for a person keeping or carrying on, either by himself or another, a bar-room or other place where spirituous liquors are sold by retail, to be drunk on the spot, to employ a minor in such bar-room or other place; and for a violation of this act the proprietor is liable to indictment for a misdemeanor, and, upon conviction, to punishment. Code, §4540 (c).

It is to be remarked that in neither of these instances is provision made for justification of the act by a failure of clerks or other employés to obey orders, or for a violation of the same. In these and similar classes of

offenses, wherever there is a want of guilty knowledge on the part of the principal, or wherever the agent alone has such, and on that account is made liable, the language employed in statutes is altogether different; as in the instance of retail liquor dealers or their clerks knowingly permitting minors to play at cards or dice in the houses where retailing is carried on and in rooms connected with the same or under their control, then the party knowingly permitting it, whether proprietor or clerk, is amenable to prosecution. Code, §4539. So, too, in the case of gaming tables at which a person, his servant or agent, presides and deals, the person so presiding or dealing is, by the ex-press terms of the law, made liable to indictment. Code, §4540.

But there is one clause of this definition of a crime which the act prohibiting the sale of spirituous liquor to a minor does not violate, viz., that which makes it con-sist in criminal negligence. Code, §4292. Even where an act is committed by misfortune or accident, in order to free it from the imputation of crime, it must be made sat-isfactorily to appear that it did not result from evil design or intention, or culpable neglect. Code, §4302. The very re-strictions placed by law upon the liquor traffic would seem designed to hold those conducting it to a rigid accounta-bility for any neglect or failure, either on their own part or that of their servants, to observe them, and in consequence of which they are rendered ineffective. Caution and vigi-lance are required at their hands. Upon these questions, the case of McCutcheon vs. The People, *ut sup* , is so satis-factory and convincing that we cannot do better than to take from it a further extract, especially upon the ques-tion made and insisted upon in this case, that before the seller can be convicted, he should know that the buyer was a minor. "We cannot," say the court, "concur in this view of the law. The license ∴ . . confers no authority on the licensee to sell intoxicating liquors to a minor, ex-cept upon one condition, viz., he shall have the written

order of his parent or guardian.  . . . The law imposes upon the licensed seller the duty to see that the party to whom he sells is authorized to buy, and if he makes a sale without this knowledge, he does it at his peril.  This is the clear meaning of the law, and any other construction would render it exceedingly difficult, if at all possible, even to procure a conviction for a violation of this clause of the statute.  This construction imposes no hardship upon the licensed seller.  If he does not know that the party who seeks to buy intoxicating liquors at his counter is legally competent to do so, he must refuse to make the sale.  It is made unlawful, either with or without a license, to sell to a certain class of persons ("such as are intoxicated, or who are in the habit of getting intoxicated") and to another class (minors), except under certain conditions; and if he violates either clause of the statute, he must suffer the penalties imposed for its violation.

" It is no answer to this view to say the licensee may sometimes be imposed upon, and made to suffer the penalties of the law, when he had no intention of violating its provisions.  This is a risk incident to the business he has undertaken to conduct, and as he receives the gains connected therewith, he must assume also with it all the hazards.  Our laws make it a crime to have carnal intercourse with a female under a certain age, either with or without her consent.  It would shock our sense of justice to hold a party not guilty because he did not know she was within the age prescribed by the statute, and therefore incapable of giving consent.  The law makes the act a crime, and infers the guilty intent from the act itself." And such have been the decisions in several others of our sister states upon the point in litigation.  Commonwealth *vs.* Emmons, 99 Mass., 6; Ulrick *vs.* Commonwealth, 6 Bush. (Ky.), 400; State *vs.* Hurtsfield, 24 Wis., 60; Barnes *vs.* The State, 19 Conn., 397.

If the analogy is complete between this statute, and that prohibiting minors from playing billiards or tenpins

at public tables or alleys, then this principle was somewhat modified in *Stern's* case, 53 *Ga.*, 229, though that qualification would not avail the defendant in this case. Proof that the party playing was a minor and that he had not the consent of his parent, it was said, made a *prima facie* case, though not a conclusive one.   There was evidence going to show that the defendant, after due diligence and proper inquiry, was misled, imposed upon and deceived into the belief that the minor was, in fact, over age, and that he honestly acted upon that belief, and this was held to be a good defence.   But in *Ridling's* case, 56 *Ga.*, 601, it is held that the analogy between these statutes is not complete, and it is satisfactorily shown that, in some of these respects, there is a marked difference in their provisions, that against furnishing minors with intoxicating liquor being more stringent in its requirements than the other.   The principle announced in McCutcheon's case and others which it follows seems to have been recognized and sustained by this court in *Downing's* case, 66 *Ga.*, 160, where, upon an indictment for selling kerosene oil, which was below the test prescribed by law, it was held that it was not essential that the state should show that the defendant meant to violate the statute in order to sustain the conviction; that it was sufficient to prove that the sale was made without the oil being tested, and that the intent would be inferred from the act itself.

Marshall's case, 49 Ala., 21, which was an indictment under their act prohibiting the furnishing of minors with intoxicating drink, holds that the party indicted may defend himself by proving, beyond a reasonable doubt, that he was misled and imposed on as to the age of the minor, and that he honestly acted under the belief, after proper inquiry, that he had attained his majority; but it would seem that the court, as we are led to infer, labored under some difficulty in reaching that conclusion, for they say " the jury must believe that he was honestly and truly misled or imposed on; without this

the law would be of little avail for the protection of the very youth for whom it was intended, to-wit, those approaching nearly their majority."

In our case, none of these precautions were taken to ascertain the age of the party purchasing the liquor; the seller professed to act only upon his appearance of maturity and the further fact that he had left college, a fact altogether indeterminate and equivocal in its character; no inquiry seems to have been made upon the point, even of the young person himself. It is by no means certain, had this been done, that he would not have answered candidly and truthfully. We think the purpose of the legislature in passing this salutary law will be best subserved by a strict and literal application of its plain and unambiguous terms to the cases arising under it. In this way only can the evils arising from a failure to observe it be effectually suppressed. Every departure from this course, by affording facilities for escape, would hold out to liquor dealers inducements to take risks. The defences set up in such cases, we fear, more frequently amount to excuses,— such as, that I did not know the party making the purchase was a minor; I was not present at the time; my clerk or bar-tender made the sale in my absence and contrary to my instructions, and therefore it was wholly beside my intention to do wrong, even by another,—for a violation of the law, than to direct answers to the charge preferred. To render such excuses unavailing, is the best mode of imposing on these dealers the caution and circumspection which is absolutely indispensable to a faithful observance of the duty enjoined by this statute; they should be made to understand that constant, if not eternal, vigilance is the price of their exemption from the penalties it imposes.

2. There is nothing in the objection that the name of the clerk, who, it was alleged, made the sale, was not set out in the indictment, and the reason given why this should have been done is altogether insufficient, as it is not perceived how the defendant was less able, on that account,

to prepare for and meet the charge preferred against him. As one of the proprietors, he doubtless knew the names of the clerks they had in their employment.

3. The plea to the incompetency of persons to serve as grand jurors, who are over sixty years of age, is disposed of by *Carter vs. The State*, determined at this term of the court.

4. Klink served as a grand juror more than four weeks in the year 1885, when the presentment in this case was made, and the defendant pleaded his disqualification to serve on that body beyond that time. There was nothing in the law, as it stood at the date of the service, to render him incompetent. Code, §3938, renders *petit* jurors incompetent for this cause, but does not apply to grand jurors; they were, however, included in the disqualification by the act of the 25th of September, 1883 (Acts, p. 99), when acting on the grand jury as talesman; but an amendment to this act, approved December 22, 1884, restored their competency.

5. If it was error not to exclude the testimony of the collector of internal revenue, that he issued a retail license to a firm of which the defendant was a member, it was immaterial error, as that fact was fully established by other testimony in the case, as well as by his participation in the management of the business and by his confession, sworn to on the trial.

6. The private instructions of the proprietors to their clerks and bar-keepers, in relation to selling to minors, were incompetent and irrelevant testimony, and were properly rejected, on objection made upon that ground.

7. The verdict was demanded by the law and evidence, and a different finding would have been contrary to both.

Judgment affirmed.