## COMMONWEALTH *vs.* HENRY L. ROOKS.

Bristol.     October 22, 1889. — November 11, 1889.

Present : DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Intoxicating Liquors — Sale to Minor by Bar-keeper.*

At the trial of a complaint for unlawfully selling intoxicating liquors to a minor, there was evidence of such a sale by the defendant's servant, after which a witness testified that she had often seen the minor going into the defendant's saloon; that just before the sale in question, at a time when the defendant was sitting in the window of his bar-room, she saw the minor go there; and that as the minor entered the saloon the defendant left the window, and in a few minutes the minor came out; but whether he got anything or not she could not say. *Held*, that the testimony was competent, as tending to show that the sale was made with the defendant's consent.

On the question of the defendant's liability for the acts of his servant, it was *held* that certain instructions given to the jury were sufficient, and that others which were refused were properly refused.

COMPLAINT for unlawfully selling intoxicating liquors to Daniel Curry, a minor, on May 28, 1888. Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

There was evidence tending to show the following facts. The defendant held licenses of the first and fourth class for the sale of intoxicating liquors, and kept a saloon in New Bedford, the front door of which opened on Water Street, and the back door on a yard leading to Griffin Street. On May 28, 1888, Curry went to the back door of the saloon, and the defendant's bartender sold to him a small bottle of whiskey.

Julia Mendoz, against the defendant's objection, testified that she had often seen the boy Curry going to the defendant's saloon; that on the Saturday previous to May 28, 1888, she saw the defendant sitting in the front window of his bar-room, and at the same time the boy Curry go into the saloon; that the defendant got down from the window, and in a few minutes the boy came out; but she could not say whether the boy got anything or not.

The defendant denied all knowledge of the sale in question, and testified that Curry was not in his shop on the Saturday previous to May 28, nor at any time to his knowledge; and

that he did not allow minors in his saloon, and had so instructed his bar-tender. The bar-tender testified that he never sold or delivered any liquor to Curry, and that he had been instructed by the defendant not to sell or deliver liquor in any way to minors, or to allow them about the premises.

The defendant requested the judge to instruct the jury as follows:

" 1. If the jury find that the defendant's servant, without the defendant's knowledge, authority, or consent, sold and delivered intoxicating liquors to a minor, such sale and delivery would not be an offence committed by this defendant, and he must be acquitted.

" 2. An unlawful sale of intoxicating liquors by a servant during the absence of his employer, is not a sale by the employer for which he can be convicted without evidence of knowledge and consent to the general violation of the law by his servant, and in the absence of evidence of such knowledge and consent the defendant must be acquitted.

" 3. If the defendant ordered or instructed his servant not to make unlawful sales of liquors, and the servant during the absence of his employer makes an unlawful sale of intoxicating liquors, such sale does not constitute a criminal offence for which the defendant is responsible, and he must be acquitted.

" 4. The government must not only prove that the defendant's servant made an unlawful sale of intoxicating liquors, but it must also prove that such unlawful sale was within the scope of the servant's authority, and in the absence of such proof the defendant must be acquitted.

" 5. An unlawful sale of intoxicating liquors by a servant at the back door of premises licensed for the sale of liquors is *prima facie* the unlawful act of the servant, for which the employer is not liable without affirmative proof that the sale was made in the presence of or with the consent of the employer.

" 6. If the defendant's servant wilfully or in violation of his instructions out of the usual course of his employment sells intoxicating liquors to a minor, such sale would not make the defendant liable for the act of his servant, unless the Commonwealth proves that such sale was made with the knowledge or consent of the defendant. . . .

" 8. While a man may be liable for acts of his servant in a civil action, which acts are contrary to express orders of the employer, the mere presence of an employer when a criminal act is committed, unless the employer consents to it and participates in it by such consent, does not constitute him a criminal."

The judge gave the first, fourth, fifth, and sixth instructions requested, and declined to give the others, but gave other instructions upon the subjects therein referred to, to which no objections were made, except that they were not in all respects equivalent to those requested and refused.

The jury returned a verdict of guilty, and in answer to a question by the judge said they did not regard the evidence as to anything previous to May 28, 1888 ; and the defendant alleged exceptions.

*T. F. Desmond & F. A. Milliken,* for the defendant.

*A. J. Waterman,* Attorney General, *& H. C. Bliss,* First Assistant Attorney General, for the Commonwealth.

DEVENS, J.   The instructions as given directed the jury to acquit if a sale to a minor was made by the defendant's servant without his knowledge, authority, or consent, or if the government failed to prove that the sale by the servant was a sale within the scope of his authority ; they treated a sale made by a servant at the back door of licensed premises as *prima facie* one for which the employer was not liable, and required affirmative proof that it was made in the presence, or with the consent, of the employer ; and they held the defendant not liable if the servant wilfully, or in violation of directions, sold intoxicating liquors to a minor, unless the sale was made with the knowledge or consent of the defendant.   These instructions were all that the case required, and were given at the request of the defendant.   We must assume that they were supplemented by proper instructions as to the burden of proof and the presumed innocence of the defendant, as other instructions were given covering the whole subject matter of the defendant's requests, and not objected to, except that they were not in all respects equivalent to all those asked for by the defendant.

While the defendant contends that the second, third, and eighth instructions requested by him should have been given, he does not show in what respect those which were given were

deficient in properly protecting the rights of the defendant, or why the exact phraseology contained in the other requests should have been adopted. These were all in some respects objectionable. The second would have required of the Commonwealth to show a "knowledge and consent to the general violation of the law by his servant," whereas knowledge or consent in the particular · instance was all that was demanded. The third would have required the jury to acquit, if the servant, during the absence of his master, violated his direction or order, without regard to the question whether the order was honestly given under such circumstances that it was intended to be obeyed. If such was not its meaning, the point had been sufficiently covered by the instructions before given. The eighth instruction, that "the mere presence of an employer when a criminal act is committed, unless the employer consents to it and participates in it by such consent, does not constitute him a criminal," would have led without explanation to the supposition that there must be some additional evidence besides the presence of the employer to establish his consent, and that it could not be inferred from his presence and knowledge merely.

At the trial, the Commonwealth relied upon a sale, made on May 28, by the defendant's bar-tender to a boy named Curry. There was evidence from a witness, Julia Mendoz, that she had often seen the boy going into the defendant's saloon, and that on the Saturday previous to May 28 she saw him go to the saloon, that the defendant himself was sitting in the front window of his bar-room, and that as the boy went into the saloon the defendant got down from the window, and in a few minutes after the boy came out. Whether he got anything or not, the witness could not say. To the admissibility of this evidence the defendant excepted. In answer to a question by the court, the jury stated that they did not regard the evidence as to anything previously to May 28. Assuming in favor of the defendant's contention that it was not competent for the jury after verdict to say that they disregarded evidence which had been improperly admitted, so as to remove the effect of an error made in its admission, we are of opinion that the evidence was admissible. It was controverted whether, if a sale to the boy

had been made by the bar-tender, it had been so made with the knowledge and consent of the defendant. It was denied that the boy Curry was ever in the shop or permitted to be there. The fact that the boy was often seen going into the bar-room, and that on one occasion it might fairly be inferred that the defendant himself attended upon and had some transaction with him, had a tendency to show that, if any sale was actually made to him by the bar-tender, it was made with the defendant's consent. *Exceptions overruled.*