## COMMONWEALTH *vs.* CHARLES S. JOSLIN.

Bristol. October 24, 1892. — April 3, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Petition to establish Exceptions — Use of Intoxicating Liquors for other than Medicinal, Mechanical, or Chemical Purposes — Purchase of Intoxicating Liquors for authorized Purpose — Evidence — Reasonable Cause to know — Condition of License — Sales to a Minor — Agent of Disclosed Principal.*

A defendant filed a bill of exceptions, which the judge of the Superior Court disallowed on the ground that it was not conformable to the truth, and his certificate stated in detail the amendments which he deemed necessary. The defendant thereupon filed in the Supreme Judicial Court a petition to establish the truth of his exceptions, and a commissioner was appointed who reported in the defendant's favor. The defendant assented to the corrections and additions suggested in the judge's certificate, but the commissioner failed to incorporate them in the bill. At the hearing before the full court the defendant consented to have them so incorporated. *Held,* that it was the duty of the commissioner to consider the statements of the judge's certificate and that the bill of exceptions, amended in conformity thereto, should be established.

A retail druggist or apothecary, holding a license of the sixth class under St. 1887, c. 431, has no right to sell intoxicating liquor, knowing or believing that the purchaser intends to use it for other than medicinal, mechanical, or chemical purposes, even though the purchaser signs a certificate, in the form prescribed by the statute, falsely stating that he wants the liquor for one of the purposes for which it may lawfully be sold.

If a retail druggist or apothecary, holding a license of the sixth class under St. 1887, c. 431, sells intoxicating liquor, intending that it shall be used for other than medicinal, mechanical, or chemical purposes, the sale is nevertheless lawful provided the purchaser in fact buys for an authorized purpose. (KNOWLTON, J. dissenting).

At the trial of an indictment against a retail apothecary who held a license of the sixth class under St. 1887, c. 431, charging him with unlawfully exposing and keeping for sale intoxicating liquors, it appeared that the defendant had made a number of different sales to each of several persons upon certificates signed by them, stating that they wanted the liquor for medicinal purposes. Evidence of a witness for the government, who was well acquainted with the different purchasers and had seen each frequently during the period covered by the alleged illegal sales, that they all appeared to be well, so far as he could see, and that he did not know of their having any sickness or of any sickness in their families, was *held* to be relevant either to the belief of the defendant as to the purpose for which the liquor was wanted, or to the actual purpose of the purchasers in buying it, and therefore rightly admitted. Evidence of the purchasers themselves as to the real purposes for which they bought the liquor was, for the same reason, rightly admitted.

In the criminal law "reasonable cause to know" is not equivalent to actual knowledge.

A retail druggist or apothecary, holding a license of the sixth class under St. 1887, c. 431, was indicted for exposing and keeping for sale intoxicating liquors with intent unlawfully to sell the same, and the government relied on evidence of sales made by the defendant to persons who signed false certificates, stating that they wanted the liquor for medicinal purposes, when they really wanted it for a beverage. *Held*, that, in order to find that the sales were unlawful, it was not sufficient for the jury to find that the defendant had "reasonable cause to know" that the liquor was really wanted for a beverage, but that they must find that the defendant did in fact have the guilty knowledge or belief.

A retail druggist or apothecary, holding a license of the sixth class under St. 1887, c. 431, is forbidden, by Pub. Sts. c. 100, § 9, cl. 4, to make any sale or delivery to a minor, " either for his own use, the use of his parent, or of any other person." This is a condition of his license within which the holder is bound to keep at his peril, and, if a sale has been made to a person who is in fact a minor, evidence offered for the purpose of showing good faith that the minor told the druggist or his clerk that he was of age is immaterial to the question of criminal liability, and should be excluded.

A retail druggist or apothecary holding a license of the sixth class under St. 1887, c. 431, who in good faith intends that sales shall not be made to minors, and instructs his clerks accordingly, and uses reasonable diligence in the selection of his clerks and in securing obedience to his instructions, is not criminally responsible for the act of a clerk in selling intoxicating liquor to a minor, whether such clerk makes an honest mistake or wilfully disobeys his employer's orders.

At the trial of an indictment charging the defendant, a retail apothecary, holding a license of the sixth class, under St. 1887, c. 431, with making unlawful sales of intoxicating liquor to a minor, the evidence tended to show that the minor was an express messenger; that he was accustomed to carry blanks torn from the certificate-book kept at the defendant's store to persons who would fill out and sign them, and give him money; that he would then carry the money and the signed certificates to the shop, receive liquor there, and take it to the purchasers; and that he had thus received it of the defendant personally and of his clerks. *Held*, that the delivery of intoxicating liquors to a minor, though acting as the agent of a disclosed principal, was forbidden by Pub. Sts. c. 100, § 9, cl. 4, and that the law in this respect was not changed by St. 1887, c. 431.

PETITION to establish the truth of exceptions alleged by Charles S. Joslin, who was found guilty upon certain counts in an indictment charging him with unlawfully exposing and keeping for sale intoxicating liquors with intent unlawfully to sell the same, and with unlawfully selling intoxicating liquors to minors. The exceptions sought to be established were disallowed by *Bond*, J., who presided at the trial in the Superior Court. Such facts as are material to the points decided upon the defendant's petition appear in the opinion.

The case was argued at the bar in October, 1892, and afterwards was submitted on the briefs to all the judges.

*J. Brown*, (*R. C. Brown* with him,) for the defendant.

*C. N. Harris*, Second Assistant Attorney General, for the Commonwealth.

BARKER, J. The defendant was found guilty upon certain counts of the indictment, and seasonably filed a bill of exceptions, which was disallowed by the justice of the Superior Court in a certificate stating in detail the amendments which he considered necessary to make the bill conformable to the truth. The defendant then filed in this court a petition to establish the truth of the allegations in his bill of exceptions, and a commissioner was appointed whose report in favor of establishing the same came before the full court at the sitting in Bristol County in October, 1892. At the hearing before the commissioner the defendant's counsel assented to the corrections and additions suggested in the certificate disallowing the bill of exceptions; but the commissioner failed to incorporate them in the bill established by him, owing to a doubt whether it was competent and proper for him to add them to the bill. At the hearing before the full court, the right and duty of the commissioner to consider the certificate was argued, and the defendant's counsel consented that the corrections and alterations should be incorporated in the bill of exceptions to be established, rather than have the matter recommitted to the commissioner. The court took the matter under advisement, and, being of the opinion that it was the duty of the commissioner to consider the statements of the certificates disallowing the bill, ordered that the bill of exceptions, with the corrections and amendments agreed upon, be established, and that they stand for argument at the November sitting of the court for the Commonwealth in Boston.        *So ordered.*

THE bill of exceptions as thus established, and afterwards argued on the merits, was in substance as follows.

The indictment contained seven counts. The first count charged that the defendant, on May 1, 1891, and from that day to November 1, 1891, " unlawfully did expose and keep for sale intoxicating liquors with intent unlawfully to sell the same," not " having then and there any license, authority, or appointment according to law therefor." Two counts charged

him with unlawfully selling intoxicating liquors on two different dates, August 1, 1891, and September 1, 1891, to Edward C. Barney, a minor; and two other counts charged him with unlawfully selling intoxicating liquors on the same dates to Henry Bishop, also a minor. The defendant was a druggist in North Attleborough, holding a license of the sixth class under the St. of 1887, c. 431. At the beginning of the trial it appeared that the district attorney had requested the defendant, in writing, to produce the books which he was required by the statute to keep, containing the certificates signed by purchasers of intoxicating liquors. The defendant declined to produce them. Thereupon the district attorney called as a witness one Freeman, a constable, who testified that since May 12, 1891, and up to November, 1891, he had visited the defendant's drug store, and had been allowed by the defendant to copy from the book required by § 3 of said statute to be kept by the defendant under his license. A printed form of the certificates required to be kept by retail druggists under said § 3 was exhibited, and it was admitted that the certificates in the defendant's book were like the form exhibited, and were properly filled out and signed by the purchasers. The witness stated that he had taken the names of the purchasers, the kinds and quantities of liquors sold, and the dates of sales, and had copied them into a book, which he produced, in which he had written the name of each purchaser, the dates when his purchases were made, and the kind and quantity of liquor which he had purchased during the period referred to. The witness then testified from his copy, that he had not found in the defendant's book any record of sales to Edward C. Barney. Being interrogated in regard to sales to Henry Bishop, the witness read from his copy as follows: " August 29, half a pint of rum to Henry Bishop, for medicinal purposes; price 25 cents. Signed Henry Bishop in two places on the certificate." The witness said he found no other record of a sale to Henry Bishop. With reference to sales to one Charles Conaty the witness testified, reading from his copy, that the defendant's book showed that nine sales of half-pints of whiskey had been made from May 15 to May 29, on different days; that from June 1 to June 30 inclusive twenty-four sales of whiskey or rum had

been made; that these were generally sales of half-pints, but that on three occasions a pint of rum had been sold; that the sales were all made on different days, except that on June 27 two sales, each of half a pint of rum, had been made to him; that from July 1 to July 31 inclusive twenty-one similar sales had been made, on different days; and that likewise fifteen sales had been made in the month of August, thirteen in September, and twenty in October; all being similar sales, and made on different days. The same witness further testified that Conaty lived in North Attleborough, and that his shop was in the same building with the defendant's; and that he was well acquainted with Conaty, and had seen him often between May and November. He was then asked, " Did you know of any sickness he had, or any in his family? " This question was admitted against the defendant's objection, and an exception was taken. The witness answered, " No, he appeared to be well, as far as I could see." The witness further testified, reading from his copy, that from May 12 to October 31 about the same number of sales, and in like quantities, on different days in each month, were made to John Carroll, to J. A. Welch, to Edwin L. Robinson, and to each of nine other persons. The witness having testified as to each of these persons, that he lived in North Attleborough, that the witness was acquainted with him, and had seen him frequently during the period covered by the sales, was asked as to each purchaser, " Did you know of any sickness he had, or any in his family? " to which question in every case he answered, " No, he appeared to be well, so far as I could see." And in every case the question was admitted against the defendant's objection, and an exception was taken.

The district attorney then called John Carroll, who admitted that the record of sales to him given in evidence by Freeman was substantially correct. He was then asked for what medicinal purposes he purchased the liquor. To this question the defendant objected, and it was admitted subject to exception. The witness answered, " I got it for chronic diarrhœa," and further testified that he was his own physician. Subject to like objection, Edwin L. Robinson testified that he did not pretend that he bought the liquor for medicinal purposes, though in

each instance he signed the certificate stating that he bought it for medicinal purposes. Subject to like objection and exception, Charles Conaty testified that he did not purchase it for a beverage. " I have always drunk it for my stomach, for twelve years. I do not use it all myself; sometimes I treated the men in the shop." The district attorney then asked this question: " I see you purchased three quarts in four days. Did you purchase it for medicinal purposes ? " The defendant objected to the question, and it was admitted subject to his exception. The witness answered, " I did what I used." He also testified, subject to the defendant's objection and exception, that he had no constitutional disease, and that he had not consulted a physician in twelve years. John A. Welch was asked the same questions, subject to the same objections and exceptions of the defendant, and testified: " I purchased it for sickness; I shall probably die of consumption; I purchased it to prevent consumption. I have never been advised to take it by a physician." On cross-examination he testified that consumption was hereditary in his family.

All the above mentioned purchasers admitted that the record testified to by Freeman was substantially correct. It also appeared, or was admitted by the Commonwealth, that the purchasers in each instance duly signed the certificate required by statute, filled out in due form.

The witness Freeman further testified, subject to the ·defendant's objection and exception, that in several instances the certificates had been torn out of the book and pasted in again; and that on these certificates the names of seven different persons appeared. The names of these persons, and the dates and amounts of their purchases, were stated by the witness. He also testified that they all lived in Plainville, a village about two miles from the defendant's store, and that the defendant had said that he knew about the certificates which they had signed, and that he considered that he had a right to have them torn from the book and signed away from the store.

Edward C. Barney testified that he was twenty years of age; that he lived in North Attleborough, and was the local agent of Earl and Prew's Express, who do a general express business in Boston, Providence, and elsewhere; and that he was their local

agent, and also did business on his own account. He further testified that it had been his practice to take blank certificates, torn from the book, and carry them at different times to the persons named by Freeman; that these persons would fill out and sign the certificates, and give him the money for the liquor; and that he would carry the money and the certificates thus filled out and signed by the purchasers to the defendant's store, and receive the liquor there and carry it to the purchasers. The defendant admitted that he knew of the delivery to Barney, and that it was made with his knowledge and consent.

Henry Bishop testified that he would be seventeen years old in February, 1892; that he had purchased liquor at the defendant's store several times, and that he got it of the defendant personally a very few times, but could not tell how many. On cross-examination he said that he had not purchased it more than three or four times; that he got it of Hill or one of the other clerks, and once of the defendant; and that he told Hill he was twenty-one years of age. It was not contended by the defendant that Bishop was not a minor.

For the defendant, Hallock H. Hill testified that he had been employed as a clerk and general salesman by the defendant for several years prior to the trial; that the defendant had instructed him and the other clerks never to sell intoxicating liquors to minors, or to other persons to whom the statute prohibited sales to be made; and that he never knowingly did sell to a minor. He admitted that he had sold liquor to Henry Bishop. He was then asked, " What did Henry Bishop tell you as to his age, — whether he was an adult or a minor? " The question was objected to and excluded; and the defendant excepted.

Charles S. Joslin, the defendant, testified that he had, in good faith, instructed his clerks never to sell to minors, or other persons to whom sales were prohibited by statute, and that he never intended to sell to such persons.

The defendant requested the judge to instruct the jury as follows:

" 1. The defendant had the lawful right, if he held a license of the sixth class as a druggist, to sell intoxicating liquors for medical, chemical, and mechanical purposes to all persons ex-

cept such as the statutes prohibit him from making such sale to, provided the purchaser, an adult, signed the certificate prescribed by the statute, and it was filled out in due and legal form. 2. If such sales be frequent to any one person to whom sales could lawfully be made, who duly signed the certificate filled out as required by the statute on each occasion of his purchase, the defendant could not be held to be criminally liable for any one of the sales, any more than he would be if such sales were only occasional, with long intervals of time between the sales. If the government contends that any such sale to such frequent purchaser was illegal or a criminal act, the burden of proof is on it to show by proper and legitimate evidence which one or more was illegal or was a criminal act. Failing in this, it cannot, under the evidence, claim that the sales proved to have been made to adults were unlawful or criminal. 3. Independent of statute, selling intoxicating liquor is a lawful business. The statute nowhere limits or defines the number or frequency of the sales which such licensed druggist may lawfully make to any one adult person who at the time of each purchase signs the certificate, if it is filled out as prescribed by statute. 4. A sale to be illegal must be such as would support a count in the indictment charging an unlawful sale or criminal sale to such adult person. If no one sale to an adult is shown to be illegal, evidence of such frequent sales would not be evidence to support the first ·count in the indictment. Immoral or unwise acts do not necessarily become criminal acts until the law defines them as such. 5. Upon the evidence, the delivery of intoxicating liquors to Barney upon the signed certificates of the purchasers for whom he acted as agent of disclosed principals, who signed the certificates filled out as prescribed by statute, were not criminal sales to Barney by reason of Barney being a minor. 6. There is a distinction between deliveries upon signed certificates or prescriptions of a physician to minors, and ordinary delivery to minors under license to sell under the fourth class. 7. If the delivery of liquors to Edward C. Barney was made by the defendant's servants without his knowledge or consent, and against his instructions as to sales to minors, or if the jury have a reasonable doubt upon the question of such delivery by the defendant, or his

knowledge thereof, he is entitled to an acquittal on the counts charging sales to said Barney. 8. Under his license the defendant had a right to keep and expose intoxicating liquors for sale, and unless the evidence shows the intent to sell to minors, or otherwise to make prohibited or unlawful sales, he cannot be convicted on the first count in the indictment."

The judge instructed the jury substantially as requested in the eighth prayer for instructions, but refused to give the other instructions requested by the defendant. A portion of the judge's instructions was as follows:

"It is not enough that the certificate is made out in proper form. Before he can justify that, it must be made to appear that the sales were made for medicinal purposes. In other words, the paper does not protect. It must appear on his part that it was for a medicinal purpose. If the defendant believed that it was for that purpose, he would not be liable. If he was deceived in that way, he would not be liable. But if a man came and by the circumstances the defendant knew or had reasonable cause to know that it was not wanted for that purpose, the certificate would not justify the sale. Where he knows or has reasonable cause to believe or know that it was not purchased for that purpose, the certificate would be no protection. When a man comes and says that he wants it for medicinal purposes, what does that mean? It is a sale made for the purpose of using the liquor as a medicine. When it is used as a medicine it is for some bodily or physical ailment. For that purpose it is right. If for social drinking, as one witness has testified, to treat his friends, or if used to produce intoxication, it is wrong. It is only when taken for some bodily ailment that it is for medicinal purposes. But where the sales were made when the defendant knew, or had reason to know, that they were not sold to be used for medicinal purposes, it is unlawful. The government relies upon the large number of sales to individuals. It is for you to say whether the defendant knew, or had reasonable cause to know, they were not for medicinal purposes. If not, the certificates would not protect him."

At the close of the charge the defendant called the attention of the court to the part of the charge above set forth, and excepted thereto.

With reference to sales to minors, the judge instructed the jury " that if the defendant made a sale to a minor upon the representation of the minor that he was twenty-one years old, and believing that he was twenty-one years old, such sale would be a sale to a minor, and the defendant would be criminally liable for such sale; that if liquor was delivered to a minor by the defendant, or by his clerks with his knowledge or consent, for the use of an adult, the defendant could be convicted for such delivery under the count charging a sale to such minor, notwithstanding the fact that such liquor was for the use of an adult, and that fact was disclosed at the time of such delivery, and notwithstanding such adult had signed a certificate for such liquor, which had been torn out of the defendant's book, and taken to such adult and signed and returned by the minor and pasted in the defendant's book at the time of such delivery; that if the sale or delivery to the minor was made by a clerk in the employ of the defendant, contrary to the instructions of the defendant to such clerk, given in good faith by the defendant, and such sale and delivery were without the knowledge or consent of the defendant, the defendant would not be criminally liable for such sale or delivery, and therefore it is necessary for the jury to determine in this case whether the defendant or his clerks made the sales as charged in said count for sales to minors, and whether, if made by the clerks, they were made with the defendant's knowledge and consent."

The jury returned a verdict of guilty on the first count of the indictment, and on each of the four counts charging sales to the minors Barney and Bishop; and the defendant alleged exceptions.

*J. Brown,* for the defendant.

*C. N. Harris,* Second Assistant Attorney General, for the Commonwealth, did not care to be heard.

BARKER, J.   The defendant contends that a license of the sixth class gives to a druggist who complies with the requirements as to the time, place, and manner of making sales the right to sell in all cases, save to prohibited persons, although he may know that the liquors are in fact bought for a purpose for which he has no license to sell, and although they are delivered to a minor.   But it is plainly the intention of the statutes, (Pub. Sts. c. 100, §§ 1, 2, 9, 10, 18, St. 1887, c. 431,) that sales of intoxi-

cating liquors by retail druggists and apothecaries shall be made only for medicinal, mechanical, or chemical purposes, and a construction which should legalize sales made by them of liquors which they know or believe are to be used as a beverage, and which are bought for that purpose, could be reached only by disregarding the evident purpose of the Legislature. To prevent sales under the false pretence of use for medicinal, mechanical, or chemical purposes, the St. of 1887, c. 431, prohibits to these dealers any license except one of the sixth class, requires a certificate of the purchaser stating the use for which the liquor is wanted, the keeping of a book containing the particulars of each sale, and the cancellation and preservation of all certificates and prescriptions, and also imposes a penalty for making a false and fraudulent certificate or prescription. If this relieved the druggist from responsibility for selling in bad faith, knowing or believing that the certificate or prescription was false and fraudulent, and that the liquors were to be used as a beverage, it would sanction subterfuges which would go far to render all restrictive legislation futile. To show that such was not the intention of the Legislature, it is not necessary to read anything into the statutes, or to construe them otherwise than with strictness. Taken together, they authorize retail druggists and apothecaries to sell intoxicating liquors only when they are to be used for medicinal, mechanical, or chemical purposes; and not to sell them whenever a purchaser makes the statute certificate. The provision that "Sales of intoxicating liquor of any kind by retail druggists and apothecaries, for medicinal, mechanical, or chemical purposes, shall be made only upon the certificate of the purchaser," (St. 1887, c. 431, § 2,) is to be read with the general prohibition, "No person shall sell, or expose or keep for sale, spirituous or intoxicating liquor, except as authorized," (Pub. Sts. c. 100, § 1,) which forbids all sales of such liquors without due authority. *Commonwealth* v. *Ramsdell*, 130 Mass. 68. And retail druggists and apothecaries cannot be licensed to sell them for a beverage. Even if the general doctrine which governs such sales, that guilty knowledge is not essential to the offence, ( *Commonwealth* v. *Julius*, 143 Mass. 132, and cases cited,) is not to be applied, their sales made in bad faith for an unauthorized purpose are illegal.

But unless one licensed to sell for an authorized purpose, and who honestly intends to comply with the law, sells at his peril, if the purchaser buys for a purpose not authorized, the charge of making an illegal sale necessarily includes the charge that the vendor believed that the sale was for a purpose not authorized, and his belief is therefore material. So also is the intention of the purchaser; because if he buys for an authorized purpose, although the vendor intends to break the law, there is no crime. Hence the requests based upon the theory that the intention, knowledge, or means of knowledge of the vendor as to the real purpose of the transactions between him and the purchasers were immaterial, were incorrect in law and rightly refused; and the evidence objected to was all relevant either to the belief of the vendor or to the purpose of the purchasers, and was rightly admitted. This would dispose of the exceptions, so far as they relate to the count for illegal keeping, if the instructions given had contained no error.

The sales to other than prohibited persons were not illegal, if in making them the defendant complied with the statute requirements and acted in good faith, honestly intending to keep within the authority given him by the law, and he could not do this unless he believed the liquors were wanted for an authorized purpose. What in the discussion of propositions of criminal law is often called the intention, is an element in the decision of this question, which is one of fact, and in dealing with it the distinction between belief or knowledge and reasonable cause to know becomes important. Neither knowledge, belief, nor intention can, in the nature of things, be proved except by inference. Reasonable cause to know is not an equivalent to knowledge. *Lindsey* v. *Stone*, 123 Mass. 332. *Carroll* v. *Hayward*, 124 Mass. 120, and cases cited. It raises a strong inference of knowledge or of belief; but it is nevertheless consistent with the absence of belief as well as of knowledge, and even with the existence of a belief contrary to the real fact; and this, too, on the part of one who has a duty to know. The mind may be preoccupied or slow, and the thought necessary to produce comprehension dormant. The inference from proof of a single circumstance which would be reasonable cause to know must be weaker than that to be drawn when the mind is shown

to have frequent occasion to consider similar facts. Not only are knowledge and reasonable cause to know, and all circumstances tending to prove either, relevant to the question of belief in such a case as the present, but reckless or negligent conduct in the transaction may be shown. If one is shown to have long had reasonable cause to know, and frequent occasion to consider, the circumstances which constitute such reasonable cause, the inference of belief becomes almost imperative; and yet it is an inference of fact, and not of law, and is for the jury. In the present case the frequency of the defendant's sales during a long period to persons whose appearance and condition might indicate that they bought the liquors for a beverage was an important fact, and may well be characterized as giving him reasonable cause to know the real purpose of the purchasers. But the jury are to be allowed to make or to decline to make the inference. The charge should have explained the distinction between that knowledge or belief on the part of the defendant, proof of which would have required the jury to find him guilty of sales made in bad faith and with the belief that they were not for authorized purposes, and that reasonable cause to know which might be consistent with his innocence. This was not done, but the jury were instructed that, if the defendant either knew or had reasonable cause to know that the liquors were not wanted for the purposes stated in the certificate, the sale would be illegal. It is true that they were also told that if he believed that a sale was for an authorized purpose he would not be guilty, and also that if he was deceived as to the purpose he would not be guilty. These last instructions, so far as they went, were correct, and if they stood alone would perhaps have been sufficient. But the statement that the defendant was to be convicted if he knew or had reasonable cause to know that the sales were for purposes not authorized, was so often repeated that the jury may have been misled. On this point the exception to the charge must be sustained, and this requires us to set aside the verdict upon the first count.

The counts for sales to minors depend on different considerations, and the error above pointed out had no tendency to affect the action of the jury upon them. One condition of the defendant's license was, that no sale or delivery should be made

to a minor "either for his own use, the use of his parent, or of any other person." Pub. Sts. c. 100, § 9, cl. 4. The condition annexed by clause 2 of § 9 to licenses of the sixth class is the only one from which retail druggists and apothecaries are exempted by the St. of 1887, c. 431; and this exemption itself implies that they are subject to the other conditions imposed by the earlier statutes. In *Commonwealth* v. *Stevens*, 153 Mass. 421, the defendant held such a license; and it was said that his servant was no doubt responsible, because he had made a sale, however innocently, which the law forbade him to make, and that the defendant would have been responsible for his own mistake if the sale to the minor had been made by him. Since the passage of the St. of 1887, c. 431, as before, a retail druggist or apothecary holding a license of the sixth class is bound at his own peril to keep within the condition imposed by the Pub. Sts. c. 100, § 9, cl. 4; and may be convicted of an illegal sale if he personally deliver intoxicating liquors to a minor, or if such a delivery is made with his knowledge or consent; although if he in good faith intend that sales shall not be made to minors, and instruct his clerks accordingly, intending that his instructions shall be followed in good faith, and use reasonable diligence in the selection of his clerks, and in his regulations and precautions to secure obedience to his instructions, he is not to be held criminally responsible for the act of a clerk in selling to a minor, whether such clerk made an honest mistake as to the minor's age, or acted wilfully in defiance of the instructions of his employer. See *Commonwealth* v. *Stevens*, *ubi supra*.

These principles were substantially embodied in the charge to the jury; but the defendant contends that Hill, the clerk, who testified that he had made sales to Henry Bishop, should have been allowed to testify as to what Bishop told him as to his age. But evidence of Hill's good faith in making sales to Bishop was immaterial to the question whether the defendant was criminally responsible for such sales, and was properly excluded.

The verdicts of guilty upon the second and third counts, charging illegal sales to Barney, are attacked upon a different footing. The evidence tended to show that Barney was an express messenger, and not of full age; that he was accustomed

to carry blanks torn from the certificate book kept at the defendant's store to persons who would fill out and sign them, and give him money; that he would then carry the money and the signed certificates to the store, and receive liquor there, and take it to the purchasers; and that he had thus received it of the defendant personally, as well as of his clerks. There was no evidence that the defendant, or his clerks, supposed Barney to be of full age; but the defendant contended that deliveries to Barney, as the agent of disclosed principals upon such certificates, were not illegal sales to Barney. It is, however, well settled that a delivery of intoxicating liquors to a minor, acting as the agent of a disclosed adult principal, was forbidden by the St. of 1880, c. 239, § 3, and by the Pub. Sts. c. 100, § 9, cl. 4, (*Commonwealth* v. *O'Leary*, 143 Mass. 95, and *O'Connell* v. *O'Leary*, 145 Mass. 311, 313,) and we are of opinion that no change in this respect was made by the St. of 1887, c. 431. The fifth and sixth instructions requested by the defendant were erroneous, and rightly refused. The instructions given covered the matters mentioned in the seventh request, and gave the jury correct and sufficient instruction as to the law applicable to the counts for sales to minors. The exceptions relating to these counts cannot, therefore, be sustained, and the verdicts upon them are to stand.        *Verdict upon the first count only set aside.*

KNOWLTON, J. I do not agree with the majority of the court in holding that a sale of intoxicating liquors by a licensed apothecary with a purpose to have it used as a beverage is lawful, if the purchaser deceiving him actually intends to use it as a medicine, and that a sale is brought within the protection of the license if either the buyer or the seller, no matter which, has a purpose to have the liquor used as a medicine.

The act of selling intoxicating liquor without a license is not *malum in se*, but *malum prohibitum*. In prosecutions under statutes regulating the sale of intoxicating liquors, as well as statutes prohibiting the sale of impure milk, it has been held for many years that the law punishes the act without looking for any criminal intent beyond the intentional doing of the thing forbidden. It has been thought that the only practicable way of accomplishing the purpose of the Legislature is to require

the seller to find out for himself whether his act is within the prohibition. So, if one intentionally sells a liquid which is in fact intoxicating liquor, although he believes it to be non-intoxicating, he is punishable. *Commonwealth* v. *Boynton*, 2 Allen, 160. *Commonwealth* v. *Goodman*, 97 Mass. 117. *Commonwealth* v. *Hallett*, 103 Mass. 452. *Commonwealth* v. *Savery*, 145 Mass. 212. *Commonwealth* v. *Daly*, 148 Mass. 428. If he sells to a minor, he is guilty, notwithstanding that he believes the purchaser to be of full age. " One holding a license must, at at his peril, keep within the terms of it." *Commonwealth* v. *Barnes*, 138 Mass. 511, 512. *Commonwealth* v. *Farren*, 9 Allen, 489. *Commonwealth* v. *Emmons*, 98 Mass. 6. *Roberge* v. *Burnham*, 124 Mass. 277. *Commonwealth* v. *Finnegan*, 124 Mass. 324. *Commonwealth* v. *Uhrig*, 138 Mass. 492. *Commonwealth* v. *Julius*, 143 Mass. 132. The decisions under the statute have been uniform in this particular, and there is no reason for giving it a different construction in the present case.

The act prohibited is the sale of intoxicating liquor in any way not expressly authorized. The act permitted to an apothecary under his license is a sale " for medicinal, mechanical, or chemical purposes." Pub. Sts. c. 100, § 2. A sale of liquor for a medicinal purpose is a sale with an intention that it shall be put to a medicinal use. The use to which it is in fact put after it has been sold is immaterial. The act is complete as soon as the sale is made, its character is permanently fixed, and the sale then is or is not a sale for a medicinal purpose. When the sale is made, the kind of use to which the liquor is to be put is in the future, and whether it is medicinal or otherwise is necessarily a matter merely of expectation and intention. If we contemplate a sale as made for a purpose in regard to the use to which the liquor is to be put, the purpose is to be determined, not by the use to which it afterwards happens to be put, but by that to which the seller intends that it shall be put. The sale licensed is a sale for a specified purpose; that is, a sale with a view to the appropriation of the liquor to that purpose or expected use. The liquor may or may not afterwards be used as expected. A sale which is not made for such a purpose and with such a view is unlawful. The characterization which distinguishes the act as lawful or unlawful pertains to the sale, not to the purchase.

Note the expressions repeated in different clauses of the statutes: "May sell pure alcohol for medicinal, mechanical, or chemical purposes." "The purpose for which it was sold." Pub. Sts. c. 100, §§ 2, 3; St. 1887, c. 431, §§ 2, 3. The intention or purpose referred to is that of the seller, not that of the buyer. It is the seller whose act is lawful or unlawful, because it is or is not done for an approved purpose, — that is, with an approved intention in regard to the use to be made of the liquor in the future.

It is true that his purpose relates to that which he expects will be done by the buyer. But the law prescribes elaborate requirements, which are intended to inform him what use the buyer expects to make of the liquor, so that he will not be likely to sell it for a medicinal purpose unless the buyer buys it for the same purpose. But if the intentions of the two parties to the sale are different, the statute looks to the intention of the seller. The vendor and vendee stand in different relations to a sale, and the purpose or intention of one in reference to the use to be made of an article sold may differ from that of the other. The statute deals with a single purpose, not with two different purposes.

As I understand it, the case stands thus. An apothecary sells intoxicating liquor. He is to be punished if the sale is not permitted by his license. It is not permitted by his license unless it is a sale for a medicinal purpose; that is, a sale with a view to have the liquor used as a medicine. It either is or is not a sale for a medicinal purpose as soon as it is made. In a supposable case, the parties to the transaction, through the deception of one of them, entertain different purposes in regard to the use to be made of the liquor. The test of legality established by the statute is a purpose or intention in regard to that. It cannot be two different purposes which are not in harmony. If it is the purpose of the seller, and if his purpose is that the liquor shall be used as a medicine, and if the forms of law are complied with, it makes no difference whether the purchaser afterwards uses it as a medicine or as a beverage, and it is of no consequence what the secret intention of the purchaser is in regard to it. On the other hand, if it is the purpose of the buyer, and the buyer intends to use it as a bev-

erage, it makes no difference that the purpose of the seller is that it shall be used as a medicine.  His license protects him only when the purpose or intention referred to in the statute is that the use shall be medicinal, mechanical, or chemical.

It seems to me that the doctrine of the opinion requires us to hold that the sale is for a medicinal purpose, and the act of selling is within the protection of the license, if either the buyer or the seller intends that the use of the liquor shall be medicinal, although the other entertains an opposite purpose, so that the purpose referred to by the statute in any case may be that either of the buyer or of the seller, with nothing to show which, or else requires us to overrule the construction which has been put upon the statute in many cases, by which it is settled that a defendant is punishable if he does the prohibited act, and that guilty knowledge is not necessary to his conviction.