## STATE OF TEXAS v. TEXAS & PACIFIC RAILWAY COMPANY.

### No. 1650.  Decided January 2, 1907.

**1.—Railway—Taxation—Gross Receipts.**

The statute imposing on railway companies a tax equal to one percent of their gross receipts (Gen. Laws 1905, chap. 141, p. 336) does not create a tax on property of any description, but an occupation tax upon the exercise by railroads of their franchises to operate their roads in this state (State v. Galveston, H. & S. A. Ry. Co., ante, p. 153.  (P. 281.)

**2.—Same—Federal Corporation.**

The Texas and Pacific Railway Company, being a corporation created by the Congress of the United States under the powers granted it by the Constitution, derives its right to carry on its business in Texas from such franchise; the State cannot, by taxation or otherwise, retard, impede, burden or control such right; and the imposition of an occupation tax on its exercise was not within the power of the Legislature.  (Pp. 280–282.)

**3.—Same—Acceptance of Act of 1873.**

The proviso to the Act of May 2, 1873, that the Texas and Pacific Railway Company should be subject to general laws of the State applicable to other railroads, and that all its property situated in the State should be subject to taxation, is not to be construed to subject the company, by its acceptance of the benefit of that act, to state taxation of its franchise derived from Congress, as well as its property.  Even if so construed, the company had no power to bargain away an exemption in the preservation of which the federal government had an interest.  (Pp. 283, 284.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The State sued the railway company to recover taxes and penalties, and had judgment for both.  Defendant appealed, and the judgment was reversed and rendered for appellant, following the previous rulings of the same court in Galveston, H. & S. A. Ry. Co. v. State, ante, p. 153. Appellee then obtained writ of error.

*Robert V. Davidson,* Attorney-General, and *William E. Hawkins* and *Jewel P. Lightfoot,* Assistants, for plaintiffs in error.

The Texas & Pacific Railway Company, although finally chartered under an Act of Congress, is liable for taxes under the statute. It accepted the provisions of the Act of May 2, 1873, passed by the Legislature of Texas, and thereunder received more than five million acres of public lands. In consideration thereof it solemnly bound itself, in substance, to be subject to the laws of Texas. Act 13th Leg. of Texas, passed May 2, 1873, p. 326, Special Laws; Texas & Pac. Ry. Co. v. Weatherby, 14 Texas Ct. Rep., 809; East Line & R. R. Ry. Co. v. State, 75 Texas, 434; Reagan v. Mercantile Trust Co., 154 U. S., 413; Central Pac. Ry. v. California, 162 U. S., 119; Western U. T. Co. v. Massachusetts, 125 U. S., 530; Union Pac. Ry. Co. v. Peniston, 18 Wall., 5; Massachusetts v. Western Union T. Co., 141 U. S., 40; Ashley v. Ryan, 153 U. S., 436; Union Pac. Ry. Co. v. Lincoln County, Fed. Cas. No. 14378 (1 Dill., 314).

*Thomas J. Freeman,* for defendant in error.—The Texas & Pacific Railway Company is a federal corporation, chartered and existing under an Act of Congress, and Congress alone has the right to regulate the exercise of its corporate franchises and operations. It is contended by the state that the tax imposed under the bill designated herein as the Gross Receipts Bill is a tax upon an occupation or business. It therefore follows, from the two foregoing propositions, that, if it is a tax on the occupation or business, it is null and void, and can not be enforced as against the Texas & Pacific Railway Company on account of its federal charter. The charter of the Texas & Pacific Ry. Co., 16 Statutes at Large, p. 573, and especially sec. 19 of said Statutes; Judson on Taxation, sec. 29, p. 32; Prentice and Eagan, Commerce Clause of the Federal Const., pp. 230, 231, 232; McCullough v. Maryland, 4 Wheaton, 316; Osborne v. United States Bank, 9 Wheaton, 738; Pacific Removal Cases, 115 U. S., 2; Texas & Pac. Ry. Co. v. Cody, 166 U. S., 606; Union Pac. Ry. Co. v. Penniston, 18 Wall., 5; United States v. Union Pac. Ry. Co., 91 U. S., 72; Weston v. City Council of Charleston, 2 Peters, 462. California v. Central Pac. Ry. Co., 127 U. S., 1; Atlantic & Pac. Tel. Co. v. Philadelphia, 190 U. S., 160; Reagan v. Mercantile Trust Co., 154 U. S., 413; Farmers' & Mechanics' Nat. Bank v. Dearing, 91 U. S., 29; Pensacola Tel. Co. v. Western U. T. Co., 96 U. S., 1.

WILLIAMS, ASSOCIATE JUSTICE.—This action is of the same nature as that of The State v. The Galveston, Harrisburg & San Antonio Railroad Companw, recently passed upon by this court. (Ante, page 153.) There is, in this case, one question which was not in the former one.

Besides its other defenses, the defendant in error asserts that it is exempted from the tax imposed by the Statute of 1905, construed in the former case, by the fact that it is a federal agency, incorporated by virtue of an Act of the Congress of the United States, and derives its franchises to be a corporation, and to own and operate its road through the State of Texas from that source, and not from the State, invoking the doctrine that the operations of agencies established by the United States government for the accomplishment of its legitimate purposes are not taxable by the States. The legislation on which the various propositions

of the State and the railroad company depend is stated in Texas & Pacific Railway Company v. Gay, 88 Texas, 113, and in the Pacific Railway Removal Cases, 115 U. S., 2, and need not be restated here.

We regard this question as entirely settled, and the discussion of all of the propositions involved in it as foreclosed by the decisions of the Supreme Court of the United States, which, in such matters, are binding on this court. That Congress is authorized, for the necessary and proper execution of the powers granted to the federal government, to create corporations, and empower them to carry on their operations in the States; that such corporations are to be regarded as instrumentalities of the United States, and that the rights to conduct their authorized businesses are beyond the power of the States in which they operate, "by taxation or otherwise, to retard, impede, burden, or in any manner control," are propositions which were laid down in the case of McCulloch v. Maryland, 4 Wheaton, 316, reaffirmed. in Osborne v. United States Bank, 9 Wheaton, 738, and followed and enforced in many later cases. By these later decisions it has also been settled that corporations chartered by Congress, with power to construct, own and operate railroads through the States, as military and post roads, are such agencies, and are protected in the same way as other governmental agencies from interference with their operations by state legislation; and that the transcontinental roads, built under the authority and with the aid of Congress, and known as the several Pacific systems, including the Texas & Pacific Railroad, are of that character. And it is the fully established doctrine of the Supreme Court of the United States that the operations of those roads, as distinguished from their property within the States, are exempt from taxation by the States. (Pacific Removal Cases, 115 U. S., 2; United States v. Union Pac. Ry. Co., 91 U. S., 72; California v. Central Pac. Ry. Co., 127 U. S., 1.)

In the opinion in the case of The State v. The Galveston, Harrisburg & San Antonio Railway Company, this court defined the tax imposed by the statute under consideration as being, not a tax upon property of any description, but an occupation tax, or a tax upon the exercise by railroad companies of their franchises to operate their roads in this State. At pages 172, 173 of the report referred to, Mr. Justice Brown, speaking for this court, says: "Since a corporation can carry on no business except that for which it holds a franchise from the State, it follows that any tax levied upon a corporation in this State for exercising the privilege of carrying on its business must be classed as an occupation tax under our Constitution, and, in all tests of the validity of such a tax, those provisions of the Constitution which apply to occupation taxes must be the standard." That which is taxed, therefore, is the carrying on of the railroad business in the State; in other words, the operations of the railroad companies under their charters. The statement in the quotation, that a corporation can carry on no business except that for which it holds a franchise from the State, is true of those corporations to which alone it had reference, viz.: those which derive their franchises from the State; but this can not, consistently with the decisions of the Supreme Court of the United States, be affirmed of railroad corporations receiving from Congress franchises to construct, own and operate roads within the States, as agencies to effectuate governmental

purposes. These derive their authority to pursue the occupation of railroading from the federal government, and can not, without the consent of Congress, be prevented from or hindered in engaging in that occupation by state legislation of any character. Such is the doctrine laid down by the court, whose decisions upon such questions are conclusive upon us. It is said that the purpose of the law was only to tax the occupation of doing a railroad business wholly within the State, and that is true; but it does not meet the difficulty. The doctrine we are considering does not at all depend upon the distinction between intrastate and interstate commerce. It affirms the paramount authority of the federal government to maintain railroads as its agencies within the States, and to empower them to carry on their operations by the authority of Congress alone. This phase of the doctrine is thoroughly developed in Osborne v. The Bank, supra. It would be useless for us to examine or even to restate the reasoning upon which the doctrine has been built up. It is too firmly established to be questioned in the state courts.

When it is said that the State taxes only the occupation of carrying on the business in the State, the answer is that that occupation is authorized by the laws of the federal government, and can not be taxed by the State. It is said that the defendant in error received franchises from the State, and for that reason should be amenable to taxation by the State. In this respect it is in the same position as some of the other Pacific systems, whose liability to state taxation has been considered by the Supreme Court of the United States in some of the cases cited. In a number of the cases it has been held that the property of these railroads is taxable in the States where it is situated, while neither the operations of the roads nor the federal franchises under which they are operated are subject to such taxation. In California v. Central Pacific Railway, 127 U. S., 1, it appeared that the State of California had undertaken to tax all of the franchises of the company, state and federal, as property blended and valued together; and the court held that the federal franchises could not be taxed, even as property, because they were essential to the operations which Congress had authorized the company to carry on in aid of the government; and that, as these franchises were so blended in the assessment with other property of the railroad company as to make them undistinguishable, the whole assessment was void. The subsequent case of Central Pacific Railroad Co. v. California, 162 U. S., 119, involved the validity of an assessment made by the State upon the value, as property, of the franchises which the company had received from the State, excluding the federal franchises. A majority of the court held that the state franchises might have a property value of their own, and that this was a proper subject of state taxation. But the court again unmistakably recognized the proposition that the operations of the company could not be taxed, because it was authorized to carry them on by Congress, and could not be impeded therein by the State. The distinction between that case and this is plain. There the property of the company, other than its federal franchise, was taxed. As property the two were held to be separable. Here, the right to pursue the very occupation authorized by the federal franchise is taxed. That occupation is one, and indivisible. It can not be

said of it that a part is pursued under the state and a part under the federal franchises, for all of it is authorized and enjoined by the federal charter. It is the fact that the federal charter has been held affirmatively to authorize the business of the corporation and to override any law of the State imposing burdens upon the carrying on of such business that gives exemption from state taxation of the occupations so authorized. Under this doctrine the occupation is pursued under a right and duty derived, not from the State, but from the United States; and if the State's authority were withdrawn the occupation would still be authorized in all its fullness by the federal charter. Whether or not it is true that this company holds and enjoys franchises from the State, which have a value of their own, and which may therefore be taxed as property upon such value, is a question not involved in this case. If so much be conceded, it does not sustain an effort to tax the occupation, the carrying on of which is authorized and enjoined by the federal government. Nor can the acceptance of the Act of the Legislature of Texas of May 2, 1873, which, in granting certain rights and privileges to the Texas & Pacific Railway Company, provided: "and said Texas & Pacific Railway Company shall be subject to such general laws as may be enacted by the Legislature applicable to other railroads constructed within this State; and that all the property of the said corporations, or either of them, now or hereafter situated in this State, shall be hereafter subject to taxation by the laws of this State," be held to subject to the power of taxation of the State the performance of the duty which the company has assumed to the general government to construct and operate its road through the State. This statute declares its own rule as to the power of taxation, which is that the property of the company shall be subject to that power; and it would hardly comport with sound principles of construction to make the more general declaration that the company "shall be subject to such laws as may be enacted" extend the operation of the more specific rule as to taxation. The company is subject to the police power of the State, and its property here situate is subject to taxation by the State, and this is all the statute, upon a just construction, can be held to mean. This makes it conform to the doctrines laid down by the Supreme Court of the United States upon the subject. (Reagan v. Mercantile Trust Co., 154 U. S., 417.) The statement in the opinion of Mr. Justice Brewer, in the case just cited, that this company "is, as to business done wholly within the State, subject to the control of the State in all matters of taxation, rates, and other police regulations," plainly appears, from his preceding quotations from other decisions, to have reference, in the matter of taxation, to the rulings already made by that court, distinguishing between taxation of the property of such agencies and taxation of "the right of the company to exist and perform the functions for which it was brought into being." Attempts of the States to levy the latter kind of tax have proved futile in every instance in which they have been passed upon by the Supreme Court. The immunity is thus given to these socalled governmental agencies, not as a private right of their own merely, but as essential to the security of the rights of the government and the discharge of the duty which they are held to have assumed towards the government, which, it has been thought, would be unduly obstructed by a power in

the States to impose taxes upon their operations. The power to tax, it has been said, is the power to destroy, and the existence of such a power in the States over the instrumentalities of the United States has always been regarded by the Supreme Court as inconsistent with the power of the federal government to establish such agencies, and to provide for and enforce the efficient discharge of their duties to it. It is the interest of the government, therefore, that controls, and not simply that of the agent. If the right were recognized in such agencies by engagements with the States, to take on or throw off, at pleasure, the immunity deemed so essential to their efficiency, the great arguments by which, with such pains, the doctrine has been built up, would dwindle into insignificance.

If, under present conditions, there appears to be little real foundation for the assumption that railroads such as this one are, in practice, governmental agencies; if there is little difference, in fact, between them and other railroads which have not received charters, nor aid, nor protection from the United States government, but which may, and perhaps do, render to the government services of like character and upon like terms with them; if their immunity from state taxation operates as a discrimination between them and the other roads; and, finally, if the protection given to them by the Fourteenth Amendment to the Constitution of the United States, against discriminatory state legislation, detracts much from the applicability to them of the reasoning upon which Chief Justice Marshall founded the doctrine under consideration, the remedy, if there be one, is not with the Legislatures, or the judiciary of the States, nor now, perhaps, with the federal judiciary, but with the Congress of the United States.

We conclude that the judgment of the Court of Civil Appeals in favor of defendant in error is correct, although based upon reasoning to which we have not agreed, and it will therefore be affirmed.

*Affirmed.*