

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

April 1, 1963

Honorable H. J. Blanchard                    Opinion No. C- 46
Chairman, Sub-committee on
  Senate Bill 212                            Re:  Constitutionality of
The Senate of The State of Texas                  Senate Bill No. 212
Austin, Texas

Dear Sir:

        This is in answer to your request for an opinion as
to whether or not Senate Bill No. 212 of the 58th Legislature
is contrary to the constitutional provisions of Article VIII,
Section 2, of the Texas Constitution.

        The pertinent part of S.B. 212 reads as follows:

        "Article 12.03.  Corporations exempt.
        The franchise tax imposed by this Chapter
        shall not apply to any insurance company,
        surety, guaranty or fidelity company,
        transportation company or sleeping,
        palace car and dining car company now
        required to pay an annual tax measured
        by their gross receipts, or to any corpora-
        tion organized as a railway terminal corpo-
        ration and having no annual net income from
        the business done by it, or to corporations
        having no capital stock and organized for
        the exclusive purpose of promoting the
        public interest of any county, city, or
        town, or other area within the State or
        to corporations organized for the purpose
        of religious worship or for providing
        places of burial not for private profit,
        or to corporations organized for the pur-
        pose of holding agricultural fairs and
        encouraging agricultural pursuits, or
        for strictly educational purposes, or
        for purely public charity, or to State-
        chartered building and loan associations;
        or to any mutual investment company
        registered under the Federal Investment
        Company Act of 1940, as from time to
        time amended, which holds stocks, bonds

> or other securities of other companies
> solely for mutual investment purposes
> for nonprofit corporations having no
> capital stock organized for the purpose
> of the education of the public in the
> protection and conservation of fish,
> game and other wildlife, grass lands
> and forests, or for nonprofit corpora-
> tions having no capital stock organized
> for the purpose of providing or operating
> recreational facilities."

This bill with a few amendments reads the same as Acts 1907, 30th Leg., 1st C.S., p. 503. The bill is identical with Article 12.03, Title 122A, Taxation-General, Vernon's Civil Statutes, with the exception that the last clause of Article 12.03 as amended by Acts 1961, 57th Leg., p. 41, ch. 27, Sec. 1, which reads as follows:

> ". . . or to nonprofit water supply
> or sewer service corporations organized
> on behalf of cities or towns pursuant to
> Acts of 1933, 43rd Legislature, 1st Called
> Session, Chapter 76, as amended.",

was deleted and the following clause was added:

> ". . . or for nonprofit corporations
> having no capital stock organized for
> the purpose of providing or operating
> recreational facilities."

Section 1 of Article VIII of the Texas Constitution authorizes the Legislature to impose occupation taxes, both upon natural persons and upon corporations other than municipal.

Section 2 of Article VIII of the Constitution provides:

> "All occupation taxes shall be equal
> and uniform upon the same class of sub-
> jects within the limits of the authority
> levying the tax; . . ."

36 Tex.Jur.2d 627, Licenses, Sec. 34 makes this statement:

> ". . . Moreover, any tax levied on a
> corporation for exercising the privilege
> of carrying on its business must be classed
> as an occupation tax. . . ."

40 Tex.Jur. 82, Taxation, Sec. 53 provides:

> ". . . The occupation tax laws include

a tax of one per cent. of the products of
. . . a corporate franchise tax, . . ."

Both of these Texas Jurisprudence quotations cite as authority the case of State v. Galveston, H. & S. A. Ry. Co., 100 Tex. 153, 97 S.W. 71 (1906). The Supreme Court in this case had before it the construction of an act of the 29th Legislature, Gen. Laws 1905, p. 336, c. 141, the caption of which reads as follows:

"An act imposing a tax upon railroad corporations, the receivers thereof, and other persons, firms, and associations of persons, owning, operating, managing or controlling any line of railroad in this state, for the transportation of passengers, freight, and baggage or either, equal to one per cent. of their gross receipts, and providing for the collection and payment thereof, and repealing the existing tax on the gross passenger earnings of railroads."

The Court in its opinion had the following to say:

". . . Since a corporation can carry on no business except that for which it holds a franchise from the state, it follows that any tax levied upon a corporation in this state for exercising the privilege of carrying on its business must be classed as an occupation tax under our Constitution, . . ."

The United States Supreme Court, 210 U.S. 217, reversed the decision of the Texas Supreme Court, but only on the grounds that it was a burden on interstate commerce and did not change the ruling as to the construction of franchise tax being an occupation tax. Texas Jurisprudence, Taxation, Section 40, supra, also cites the case of State v. Texas & P. Ry. Co., 100 Tex. 279, 98 S.W. 834 (1907). In this case the Supreme Court cited the Galveston case, supra, as authority in construing the same tax statute.

The Court in the case of Millers' Mut. Fire Ins. Co. v. City of Austin, 210 S.W. 825 (Tex.Civ.App. 1919, no writ history), cited the Galveston case, supra, as authority for their holding, in which they had the following to say:

"The tax provided for in the law of 1903 is undoubtedly a tax allowing mutual insurance companies to pursue their business

> in Texas, an occupation tax, and it is
> not an ad valorem tax on property."

The statute under construction in the Millers' Mutual case, supra, reads as follows:

> "Each and every mutual insurance com-
> pany operating under this act shall pay
> to the insurance commissioner annually
> on the 31st day of December, one-half
> of one per cent. of all the gross pre-
> miums received during the year, and no
> other tax shall be required of such
> mutual insurance companies, their
> officers and agents, except such fees
> shall be paid to the commissioner of
> insurance as is required by law."

All of the tax statutes referred to in these three cases cited above are gross receipts taxes or a tax based on the amount of business done by the different corporations and are not franchise taxes within the meaning of the franchise tax as used in Senate Bill 212, supra, here under considera- tion. A corporate franchise tax is a tax on the privilege of doing business and is due whether or not the corporation does any business and is not a tax based on the amount of business done by the corporation.

Although the Courts made the statement in the decisions above cited that the franchise tax is an occupation tax, in reality, there was no franchise tax involved in such cases and the statements of the Courts amounted to dictum and should not be regarded as controlling the question before us at this time.

The franchise tax is not an occupation tax within the meaning of Article VIII, Sections 1 and 2 of the Texas Consti- tution, as construed by Attorney General's Opinion No. V-1027 dated April 3, 1950, a copy of which is enclosed herewith, and as interpreted for many years by the Legislature in allocating the funds derived from franchise taxes. The Legislature has consistently allocated the franchise tax to the General Revenue Fund. If it is an occupation tax, one-fourth of such revenue under the Constitution would have to be placed in the Available School Fund. Section 3, Article VII, Constitution of Texas. Moreover, the Secretary of State, the Comptroller of Public Accounts, the State Treasurer and the Attorney General for a long period of years have uniformly and consistently con- strued the franchise tax as not being an occupation tax.

The Supreme Court of Texas in speaking of departmental construction has stated:

> "This long-continued administrative
> construction is entitled to great weight,
> especially in view of the fact that the
> statute was amended as late as 1943 and
> the Legislature, which is presumed to
> have been aware of the interpretation,
> made no changes in the language that
> would indicate a contrary intent."
> Burroughs v. Lyles, 181 S.W.2d 570
> (1944).

The franchise tax is not a property tax within the terms of Section 2 of Article VIII of the Texas Constitution, but is an excise tax levied on the privilege for the corporation to do business in Texas.

We are of the opinion that since franchise taxes are not occupation taxes nor property taxes, then the provisions of Section 2 of Article VIII do not apply to this law.

Since this bill classifies different types of corporations, the question arises as to whether or not it is contrary to other provisions of the Constitution such as due process or equal protection of the laws.

There are many Texas cases in which the courts have held that the Legislature has authority to classify different types of business for purpose of taxation so long as the legislation is not discriminatory nor arbitrary as between the same or like classes of business.

In the case of Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896, 901 (1937), the Court in speaking of a greater tax per store on chain stores than on individual stores pointed out: quantity buying, ability to pay cash and receive discounts, skill in buying, warehousing, and distribution from single warehouses, capital, unified advertising, superior management, standard form of display, concentration of management in special lines, and standardization. These distinctive features were held to be interrelated and interdependent in the chain store business.

In the opinion in Hurt v. Cooper, supra, the Court said at page 900:

> "That is a definite holding that mer-
> chants may be divided into classes and
> the classes taxed in different amounts
> and according to different standards;
> that the considerations upon which such

> classifications are based are primarily
> within the discretion of the Legislature;
> and that courts can interfere only when
> it is made clearly to appear that there
> is no reasonable basis for the attempted
> classification. If there is a reasonable
> basis or, to express it differently, if
> it cannot be said that the Legislature
> acted arbitrarily, the courts will not
> interfere. Mere differences in methods
> of conducting businesses have long been
> recognized in this state as sufficient
> to support the classification of mer-
> chants for the purpose of levying occu-
> pation taxes. For instance, our sta-
> tutes (see article 7047, as amended
> /¯Vernon's Ann. Civ. St. art. 7047_7)
> levy occupation taxes on itinerant mer-
> chants and peddlers. The difference
> between their occupations and that of
> an ordinary merchant is not great, but
> it would hardly be contended at this
> time that it is not sufficient to sup-
> port a separate classification."

Difference in profits derived, in extent of consump-
tion of articles, and other conditions that might be supposed,
can properly be taken into consideration by the Legislature in
making classifications and in determining amount of occupation
taxes to be laid on each.

The mere fact that discrimination is made in classi-
fications for occupation taxes proves nothing against classi-
fication which is not on its face an arbitrary, unreasonable
or unreal one.

The Court in rendering its opinion in Texas Co. v.
Stephens, 100 Tex. 628, 103 S.W. 481, 484 (1907), in which
an objection was made that a statute discriminates between
persons pursuing occupations which belong to the same class,
said:

> ". . . The very language of the Consti-
> tution of the state implies power in
> the Legislature to classify the sub-
> jects of occupation taxes and only
> requires that the tax shall be equal
> and uniform upon the same class. Per-
> sons who, in the most general sense,
> may be regarded as pursuing the same

occupation, as, for instance, merchants, may thus be divided into classes, and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. . . ."

In Ex Parte Day, 76 S.W.2d 1060, Tex.Crim. (1934), Appellant was convicted on complaint of not having license for coin-operated handkerchief vending machines. He claimed that Article 7047A-1 was violative of Article VIII, Section 2, in that it was not equal and uniform because pay toilets and drinking cup vending machines were exempted. He also complained because the tax on marble machines was greater than, and measured by different standard than "other similar amusement machines." Relief was denied.

We quote from page 1064:

". . . businesses of the same general class may be properly subdivided or reclassified where reason exists therefor. Particular attention is called to this because there are commodities and commodities, amusements and amusements, services and services; and, if reason exists therefor, the Legislature may subdivide or reclassify commodity vending machines, service vending machines, and amusement vending machines. In Quong Wing v. Kirkendall, 223 U.S. 59, it is laid down that a state enactment may make discriminations, if founded on distinctions not unreasonable or purely arbitrary."

-210-

That the Courts have nothing to do with the policy, wisdom, expediency or propriety of legislative enactments is almost a maxim.  Ollre v. State, 123 S.W. 1116 (Tex.Crim. 1909).

We are of the opinion that in compliance with the rule laid down in the above cases, the Legislature has authority to classify the various types of corporations for franchise tax exemptions as provided in S.B. 212 and that it is not in conflict with Section 2 of Article VIII of the Texas Constitution. We are further of the opinion that since the classification is a reasonable one and cannot be said to be discriminatory nor arbitrary, it is not in conflict with any other provisions of the State Constitution.

## S U M M A R Y

Senate Bill No. 212, 58th Legislature, does not violate the provisions of Article VIII, Section 2, or other provisions of the Texas Constitution.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: J. H. Broadhurst
Assistant

JHB:pw

Enclosure

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
W. O. Shultz
Bill Allen
Arthur Sandlin

APPROVED FOR THE ATTORNEY GENERAL
By:  Stanton Stone