ALBERT OLLRE v. THE STATE.

No. 43.    Decided June 23, 1909.

Rehearing denied December 22, 1909.

1.—Sunday Law—Construction of Statutes—Intoxicating Liquors.

Section 20 of the Act of the Thirtieth Legislature, page 266, having been taken practically from a similar statute of the State of Missouri, which latter statute has received a judicial construction by the Supreme Court of that State, it must be presumed that such interpretation was intended to be carried into said Act when it was adopted by the Legislature of Texas.

2.—Same—Principal—Agency—Construction of Statutes.

Section 20 of the Act of the Thirtieth Legislature, page 226, which provides that the liquor dealer himself shall be held liable for any sales by his agent in violation of such section, does not conclude the principal from showing want of authority on the part of said agent to make such sale, and that said sale was made in violation of the principal's command or without his knowledge. Ramsey, Judge, dissenting.

3.—Same—Statutes Construed—Knowledge.

Section 19 of the Act of the Thirtieth Legislature, page 266, providing that knowledge of the principal is necessary to convict him of a violation of any of the provisions of said section, must be construed together with section 20 of said Act, so that the two sections harmonize in their purpose and intent.

4.—Same—Violation of Sunday Law—Agent—Case Stated.

Where, upon trial of a violation of the Sunday law by selling intoxicating

liquors in violation of section 20 of the. Act of the Thirtieth Legislature, page 266, the defendant's evidence showed that the person who sold said liquor had no authority to open defendant's place of business to sell said liquor; that said person was not acting as a bartender of the defendant; that said person, if he sold any such liquor on Sunday, did so without the consent or knowledge of the defendant; that he was expressly told not to sell any of said liquor; that the defendant simply left said person in charge of his premises during defendant's absence, and that if any liquor was sold by said person it was done in defendant's absence, without any authority. Held, that defendant was not criminally liable for the sale of such liquor on Sunday, as provided by said section.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. E. R. Campbell.

Appeal from a conviction of a violation of the Sunday law under section 20, Act of the Thirtieth Legislature, page 266; penalty, $25.

The opinion states the case.

*C. E. & A. E. Heidingsfelder,* for appellant.—Cited cases in majority opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.—Cited cases in dissenting opinion.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted for violating what is popularly known as the Baskin-McGregor liquor bill. Among other things, that Act of the Legislature inhibits the selling of intoxicants by retail liquor dealers between the hours of twelve o'clock Saturday night and five o'clock Monday morning. The first count in the indictment charges appellant with having violated this provision of that Act. The second count in the indictment charges, in a general way, that appellant was a merchant and dealer in goods, wares and merchandise, to wit, a liquor dealer, and as such liquor dealer sold his goods on Sunday, to wit: a glass of beer to one E. E. Williams.

The evidence for the State, in substance, shows that on Sunday, the 6th day of September, somewhere about two or three o'clock in the afternoon in appellant's saloon one Walter Winner sold to E. E. Williams and others beer. The theory of the State is that Winner was the agent, clerk and employe of appellant, and as such sold the beer to these parties in appellant's place of business on said Sunday evening. These witnesses swear that Winner sold them beer on the Sunday evening and for which they paid him. Appellant testifies that he closed his business house Saturday night at 12 o'clock and until 5 o'clock Monday morning, and so far as he personally knew it was not opened for business. That somewhere about 9 or 10 o'clock Sunday morning he and his family left the place and went into a different part of the city of Houston to spend the day with relatives, and were gone four or five hours. The sale alleged occurred during his absence. He says these sales occurred,

if at all, without his knowledge or consent and that he in no way authorized such sales. *That he had no bartender, and that nobody but himself was authorized to sell.* That he was spending the time he was absent from his place of business at his mother's and took the key to his house with him. That there was no key to the door of that part of the house where the beer was kept and sold, but that it was barred from the inside and there is a partition between the beer apartment and that portion of the house where his family resides. That Winner was taking care of his place in his absence. That he secured him simply to look after his place and keep things straight, from being stolen and carried away, and to look after his place in a general way; that Winner was without authority to open his beer apartment or sell beer. He says he did not have any beer there on tap; that it ran out about half past eleven o'clock Saturday night, and there was not a drop of beer there on Sunday as far as he knew, and that if Winner got any beer he did not know where he got it. That he himself did not get any beer for him, nor did he know whether Winner took in any money or not. That when he reached his place, after being informed of Winner's arrest, that the door was wide open and the place open to the public. That he did not know whether any beer was sold or not, as he was not there. That he did not leave Winner there to do any business. Among other things, during the examination, appellant was asked the following questions, and made replies as follows: "Q. What did you have to do with him being convicted? (referring to Winner). A. It is my place of business and I am responsible for what happens in my place of business. Q. You knew that when you left him there? A. That is why I told him not to sell anything. Q. You took a chance on that when you left him there? A. Yes, sir; I went away on Sunday lots of times and closed my place of business up and left him there. Walter Winner is a negro. He had never been working for me. I just left him there. I didn't pay him anything. He just stayed there for fun. He just stayed there because he wanted to, I reckon. My brother-in-law raised him, you know." This is perhaps a sufficient statement of the facts to bring in review the main questions in the case.

Section 19 of the Baskin-McGregor Act, Acts of Thirtieth Legislature, p. 266, reads as follows: "Every retail liquor dealer or malt liquor dealer, or other person who shall knowingly sell, give away or otherwise dispose of or suffer the same to be done, about his premises, any intoxicating liquor in any quantity, to any minor, without the written consent of the parent, master or guardian of such minor first had and obtained, or who shall have in his employ about his place of business, or who shall permit any minor to enter and loaf or remain in his place of business, shall be guilty of a misdemeanor," etc. Section 20 prescribes that "any sale, gift or

other disposition of intoxicating liquors made to any minor without the permission or consent herein required or to any habitual drunkard, or on Sunday or election day by any agent, clerk or other person acting for any retail liquor dealer or retail malt dealer, or other person, shall be deemed and taken to be for all purposes of this act, as the act of such retail liquor dealer or retail malt dealer, or other person." It will be noted from the reading of these two sections that from the first the owner or principal or anybody about his premises with his knowledge and consent, etc., who shall disobey its provisions shall be punished. That section 20 undertakes to punish any agent, clerk or employe of such principal who does the inhibited things mentioned in said section 20, and also provides that the principal shall be punished for the act of the agent, clerk or employe. It is well known that section 20, above quoted, is practically the same as that known as the Missouri dram shop law. It was taken almost literally from that Act and placed in our statute. The Missouri statute reads thus: "Any sale, gift, or other disposition of intoxicating liquors made to any minor without the permission or consent herein required or to any habitual drunkard by any clerk, agent or other person acting for any dram shop keeper, druggist, merchant or other person, shall be deemed and taken to be for all the purposes of this article as the act of such dram shop keeper, druggist, merchant or other person." So, by a comparison of this quotation from the Missouri dram shop law with section 20 of the Baskin-McGregor law, insofar as the essential principles and questions involved in this case are concerned, they are practically the same. Long prior to the passage of the Baskin-McGregor law the Missouri statute had received a well settled construction by the courts of last resort of that State, and was thoroughly understood · by the Legislature of Texas at the time of the adoption of the Baskin-McGregor law. In fact, it may be stated as part of the history of that law, that Mr. McGregor, a member of the Legislature, whose name appears in connection with the law, came from Missouri to Texas and was familiar with the working of what was known as the Missouri dram shop law, and was an eminent lawyer in that State, and with his knowledge of that law and the construction placed upon it, he sought to engraft, and did so successfully, these very provisions of the Missouri dram shop law upon the Texas statute. Wherever a statute has received judicial interpretation by which its terms and its words have been well settled or established as to their meaning and purpose and intent, it will be presumed that such interpretation was intended to be carried into the law when such law has been adopted by another legislative body. Munson v. Hallowell, 26 Texas, 474; Morgan v. Davenport, 60 Texas, 230; Brothers · v. Mundell, 60 Texas, 240; Sanders v. Bridges, 67 Texas, 93. In the case of State v. McCance, 19 S.

W. Rep., 648, the Missouri statute in an elaborate opinion by the Supreme Court of Missouri was held to provide a rule that where the agent, clerk or employe sold, it would only be prima facie evidence sufficient to authorize a conviction of the principal, but the decision held the statute did not provide or require or permit that such evidence would be conclusive of the guilt of the principal. It might be rebutted. In other words, the rule stated by that court was to the effect that where an agent, clerk or employe acting within the scope of his agency sold intoxicants in violation of the statute, the principal might be convicted if the case rested or stopped at that point of the evidence. In other words, it was held by this character of evidence the State had made out a prima facie case of sufficient cogency to authorize a conviction, but it was not held that such evidence would be conclusive and not subject to rebuttal. In other words, the principal would not be concluded by the mere fact that his agent or clerk or employe had sold in violation of the statute. He would have the right to meet this state of case to show want of authority on the part of the clerk to make such sale and that the sale was made in violation of his command, or without his knowledge. The decision in substance is that the principal could meet the State's prima facie case by want of knowledge on his part of the illegal act of his employe as well as by showing that he violated his authority or that the sale was not within the scope of his agency. This was a well settled construction placed upon the Missouri statute at the time of the adoption of the Baskin-McGregor law by our legislative body, and the presumption is that our legislative body adopted the Act with the purpose of giving the same effect to it here as had been given it in Missouri before its adoption here.

Again, under section 19 of the Baskin-McGregor law, knowledge is made requisite as a condition precedent to the conviction of the principal for a sale either by himself or through others. Certainly, it would not be proper to hold, nor did the Legislature intend that it should be so, that a violation of section 20 would subject the principal to punishment when the employe sold without his knowledge or authority or beyond the scope of his agency. To hold that the mere fact that the agent sold without the knowledge of the principal or without his authority or over the express inhibition would be to authorize the conviction of the principal for a thing of which he had no knowledge, that it was against his authority, and in such event to prohibit his right to defend against the sale of his clerk under such circumstances. To so hold, it occurs to us, would be directly in the face of the preceding section of the Act. Otherwise we would be met with this peculiar condition of things, that is, the principal could not be convicted under the terms of section 19 except when he knowingly sold or knowingly permitted

to be sold by his agent, whereas under section 20 he would be punished for the act of his employe or agent or clerk, while he, the principal, was in perfect ignorance of the act of such employe, or even where the employe sold in absolute disobedience of his orders or authority. It has been held in Texas wherever the question has arisen that there must be some sort of complicity to render the principal guilty for the act of his agent in the absence of the principal, and it has been the settled rule in Texas that where absent parties are sought to be held guilty in misdemeanor cases, that there must be some complicity in some manner shown with the act of the party who committed the offense. Houston v. State, 13 Texas Crim. App., 595. Sections 19 and 20, supra, at this point should be construed together and made to harmonize in their purpose and intent.

If, as a matter of fact, appellant permitted Winner to open his place of business on Sunday, he would be guilty as if he himself had done so, but if Winner opened the place of business and sold beer in violation of the provisions of the law without the authority of appellant or against his orders, certainly appellant could not be held responsible for Winner's act. Appellant's testimony is to the effect that Winner was not his agent, and had no right or authority to open his place of business or sell beer. That he had employed Winner, or had him about his place only to look after and protect it in a general way from depredations during his, appellant's absence. The rule that what an agent does is the act of his principal would not apply where the relation of principal and agent is not shown; or at least to state the rule differently and more favorably to the Act of the Legislature, the relation of principal and agent would not apply where the evidence is that agency did not exist. If Winner was the agent of appellant, employed in and about the business as bartender and sold on Sunday, a prima facie case might be made against appellant by reason of these facts. · If appellant's testimony shows the agency did not exist, or that the sale was made in violation of his orders, or against his authority, or even without his knowledge and consent, there would be no case. This position is well recognized as the law in Texas. See Gaiocchio v. State, 9 Texas Crim. App., 387. The rule laid down in McCance case, supra, was emphasized and reiterated in the cases of State v. McGrath, 73 Mo., 181; State v. Baker, 71 Mo., 475. The charge requested by appellant, therefore, should have been given. The question of intent or mistake of fact is not involved in this case and can not be under such state of facts.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied December 22, 1909.—Reporter.]

RAMSEY, JUDGE (dissenting).—My mind is not fully settled as to the correct construction to be given to the clause of the Baskin-McGregor law referred to in the opinion of the majority, but on reflection and such examination as I have been able to give the matter, I am inclined to think, both on reason and authority, that the decision is not correct. Section 20 of this Act is as follows: "Any sale, gift or other disposition of intoxicating liquors made to any minor without the permission or consent herein required, or to any habitual drunkard, or on any Sunday or election day by any agent, clerk or other person acting for any retail dealer or retail malt dealer, or other person, shall be deemed and taken to be for all purposes of this Act as the act of such retail liquor dealer or retail malt dealer, or other person." The conclusion might be inferable from this language that it was intended to make the owner of such business responsible for the pains, penalties and forfeitures in civil suits for disobedience to the requirements of this Act by the agent, the same as if violations thereof had been done in person by the principal, but this construction, we think, may be incorrect for that in the absence of such a statute, this, we believe, would in any event have been the construction necessarily to have been placed on such conduct. If we shall say that before the principal shall be liable for the act of his servant, he must be acting for him, or by his direction and procurement, then the inclusion of this matter would seem unnecessary because in the absence of such provision, under well settled principles, the proprietor would be responsible and would be a principal in such offense under our law. Is it not rather a fair inference that the Legislature intended to provide that for these violations, which the proprietor could prevent, he should be responsible as an offender, although committed without his authority and even against his express direction? Is it not a fair inference to say that having the authority to prevent such infractions of the law, he would, on acceptance of license under a law containing this provision be put on notice, that at the peril of conviction he must do so? We are not, of course, concerned with the wisdom of such provision. That was a matter for the Legislature. Our province is to determine what it means, and, having found the legislative intent to give it effect unless it should offend against some constitutional provision. I find, on examination, that similar statutes have been almost uniformly upheld, both in this country and in England. Black on Intoxicating Liquors, section 370, thus lays down the rule: "It has been already mentioned that statutes enacted in several of the States have modified the common law rule as to the criminal responsibility of a master for the acts of his servant or agent, so as to make him answerable in cases where he could not be held to liability without such statutory provisions. Under these laws, it is held to be no defense to an

indictment against the principal that the unlawful act was done without his knowledge or consent, or without his authority, or in his absence, or even that it was done in contravention of his express and bona fide orders. This rule is applied, for example, under a statute providing that any unlawful sale of liquor to a minor, by a clerk or other person acting for a dram shop keeper, shall be deemed the act of the keeper himself. So under a statute which imposes a penalty upon any person who shall sell by himself or another. The same is the case under a statute providing that no person or persons, by himself or another, shall sell, or cause to be sold, or furnished, or permit any other person or persons in his employ to sell intoxicating liquors to minors. And so under a statute subjecting to its penalty 'any person who may own or have any interest in . . . liquor sold contrary to this Act.' And under laws of this kind, an allegation in the indictment that the liquor was sold by the defendant is sustained by proof that it was sold by his barkeeper, and it is immaterial that the latter acted in violation of his instructions. The object of these statutory provisions, in effect, is to require the principal to see to it, at his peril, that no unlawful sales are made in his establishment. And if it savors of severity to subject him to punishment for the acts of others which he had expressly forbidden, it must be remembered that he can escape liability by selecting servants and agents who will keep within the law and obey his orders, or by abandoning a business which exposes him to such hazards." A rule to the same effect is thus stated in the American and English Encyclopedia of Law, vol. 17, p. 387: "In a number of jurisdictions the employer is criminally liable for a violation of the liquor laws by his agent or servant, although the acts which form the basis of the prosecution are done without his knowledge or consent, or against his directions given in good faith. These statutes, though not differing materially, if at all, from the statutes in the States in which no criminal liability is held to attach to the employer under like circumstances, are, by the construction placed upon them, held to eliminate the element of guilty knowledge or intent. It has, therefore, been held that if the statute makes it an offense for 'any person' to sell, etc., or for any person to sell 'by agent or otherwise,' or for any person to sell 'by himself or another,' or to sell 'either directly or indirectly,' or if the statute forbids any party to 'permit' the prohibited act, or if the statute requires that all saloons or dram shops shall be closed on Sunday and makes 'any' dram shop proprietor or saloonkeeper punishable for a violation thereof, the master will be liable for a violation of the act by his agent or servant committed without his knowledge or consent and against his express directions. And where the statute subjects to punishment not only the one violating the law by personally selling,

but also any person who may own or have any interest in liquors sold contrary to law, it has been held that an employer will be liable for sales made by his agent or servant in violation of the law, notwithstanding such sales were made without his knowledge or consent and against his directions. The fact that the employer attempts to rescind an illegal sale will not exempt him from liability; nor will his good faith in instructing his servant or agent to refuse to make sales of the class prohibited by statute aid him further than to commend a mitigation of the punishment imposed by law." To the same effect also is a briefer recognition of the same doctrine in Cyclopedia of Law and Procedure, vol. 23, p. 208, where the rule is thus laid down: "But if the general course of the business is lawful the master is not criminally liable for illegal sales made by his clerk, servant, or agent, without his knowledge or consent, express or implied, or in his absence and in disobedience to his commands or instructions, except where the statutes are so broad as to hold the master responsible for all acts of his employes, whether authorized or permitted by him or not." In support of this the author quotes the following authorities: "Mogler v. State, 47 Ark., 109, 14 S. W., 473; Cloud v. State, 36 Ark., 151. See, however, Wilson v. State, 64 Ark., 586, 43 S. W., 972; Lehman v. District of Columbia, 19 App. Cas., 217; Snider v. State, 81 Ga., 753, 7 S. E., 631, 12 Am. St. Rep., 350; Boatright v. State, 77 Ga., 717; Loeb v. State, 75 Ga., 258; compare Johnson v. State, 83 Ga., 553, 10 S. E., 207; Noecker v. State, 91 Ill., 494; Mullinix v. People, 76 Ill., 211; McCutcheon v. People, 69 Ill., 601; State v. Stewart, 31 Me., 515; Carroll v. State, 63 Md., 551, 3 Atl., 29; People v. Longwell, 120 Mich., 311, 79 N. W., 484; People v. Roby, 52 Mich., 577, 18 N. W., 365, 50 Am. Rep., 270; People v. Blake, 52 Mich., 566, 18 N. W., 360; compare People v. Hughes, 86 Mich., 180, 48 N. W., 945; People v. Parks, 49 Mich., 333, 13 N. W., 618; Teasdale v. State (1887), 3 So., 245; Fahey v. State, 62 Miss., 402; Gathings v. State, 44 Miss., 343; Riley v. State, 43 Miss., 397; State v. Denoon, 31 W. Va., 122, 5 S. E., 315; Police Com'rs v. Cartman (1896), 1 Q. B., 655, 18 Cox C. C., 341, 60 J. P., 357, 65 L. J. M. C., 113, 74 L. T. Rep., N. S., 726, 44 Wkly. Rep., 637; Mullins v. Collins, L. R., 9 Q. B., 292, 43 L. J. M. C., 67, 29 L. T. Rep., N. S., 838, 22 Wkly. Rep., 297." The same rule, as I conceive, is recognized and stated by Mr. Wharton in his valuable work on criminal law, vol. 1, sec. 88, where he says: "When a statute makes an act indictable, irrespective of guilty knowledge, then ignorance of fact, no matter how sincere, is no defense." Again, he says: "In several States selling intoxicating liquors to minors is indictable by statute, and in such cases, also, arises the question whether the defendant knew that the vendee was a minor. Here, again, we have the rule before us applied, it having been

repeatedly held that in cases in which knowledge is no part of the statutory offense, ignorance in this respect, coupled even with an honest belief that the vendee was of full age, is no defense; and the same rule applies to all cases of dealing illegally with minors." And he cites a case where an indictment was sustained for selling liquor on Sunday and held that the offense was committed, although it was shown that the sale was by a clerk without the defendant's knowledge or consent. See People v. Roby, supra. Among the earlier cases in which this doctrine was held was that of People v. Roby, 52 Mich., 577, delivered by that great judge, Thomas M. Cooley, where, after examining the matter at some length, he says: "Many statutes which are .in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

And in conclusion he adds: "But the statute requires the proprietor at his peril to keep the bar closed. The purpose in doing so is that persons shall not be there within the reach of temptation. This respondent did not keep his bar closed and he has, therefore, disobeyed the law. And he has not only disobeyed the law, but the evil which the law intends to guard against has resulted; that is to say, there has been, either with or without his assent—it is immaterial which—a sale of intoxicating liquors to a person who took advantage of the bar being open to enter it." The decision of the Supreme Court of Missouri, cited in the opinion, sustains in a measure the opinion of the majority. I recognize that it is the rule that ordinarily where a statute of another State is in terms adopted by our Legislature, which statute has received in the State from whence adopted a judicial construction, that ordinarily our courts will give it the same construction which it had received in the parent State. But doing this, it seems to me is to radically depart from the basic principles of our criminal jurisprudence. In the case of State v. McCance, supra, it was held that where under an indictment which charged the defendant with selling liquor to a minor and the evidence showed that the sale was made by defendant's agent, that such proof of sale is prima facie evidence of defendant's guilt which may be overcome by showing that the sale was made by the agent against defendant's positive orders given in good faith. Except in respect to certain questions where our statute in terms so provides, we do not recognize in this State any rule of prima facie evidence of guilt, but in every case where there is a plea of not guilty and the guilt of the defendant charged must rest on the evidence to the end of the case, there is no presumption of guilt and therefore no prima facie case, but the whole question must be submitted to and determined by the jury. Besides, the

opinions of the Missouri courts are not, to my mind, either very clear or very satisfactory. While we may, and I am willing to concede should, recognize the fact, as stated in the original opinion, that this legislation was in a large measure the work of Mr. Mc-Gregor, formerly a member of the Missouri bar, it must, nevertheless, be remembered that there was something like 130 other men members of that body, besides the State Senate, who had never practiced in that jurisdiction. The rule that the same construction will be given a statute as that adopted in the parent State is but one of many rules of construction and is not absolute or always imperative. The lawyers in the Thirtieth Legislature must have known, as every lawyer knows, that on issues of fact, except where in express terms provided by law, our courts have always disregarded the theory of a prima facie case. What lawyer in Texas today would hold, or say that the trial court would be justified in charging the jury in a case like this that on proof of a sale by his agent, the law raised a prima facie case? It would be such a gross and palpable violation of the well settled rule inhibiting charges upon the weight of the testimony as that it would not receive the sanction of this court for one second. And yet, unless so instructed by the court, they could, they would never know this new and strange rule. So that to adopt the Missouri construction, or to seriously regard it as a factor in interpreting this language is to do violence to every legal principle wherever it obtains in every court of Texas in every hour of her history. There is the highest authority for holding that it does not necessarily follow that the prior decision construing the law must be inflexibly followed, since the circumstances in the State adopting it may be so different as to require a different construction. Little v. Smith, 5 Ill., 400; Lessee of Gray v. Askew, 3 Ohio, 466; Jamison v. Burton, 43 Iowa, 282. The case of Gaiocchio v. The State, 9 Texas Crim. App., 387, is perhaps by implication and analogy an authority against my views. The statute in that case, however, as it occurs to me, is not so broad as necessarily to require the construction which, I think, should be given to this statute. There the Act read as follows: "That if any liquor dealer, his clerk, agent, or employe, shall, on the sale, barter, or giving away of any vinous, spirituous, or malt liquors, fail to turn the crank of the proper register, as hereinbefore required, the person so offending, for each failure, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty dollars and not more than one hundred and fifty dollars." Construing this statute, Judge Hurt, speaking for the court, says: "This Act seeks to punish the *person offending*, not by reason of the fact that he is the dealer, but by reason of the selling, and failing to turn the crank." It will be observed that this statute does not by its terms undertake to make the owner

in any way responsible for the act, whether authorized or not, of his agent, and the case is not, I think, in principle, out of harmony with my views. In construing statutes similar to this, in order to arrive at the legislative intent, we must and should give some attention and consideration to the history of the times and the evils sought to be remedied by legislation which is the subject of construction. We can not close our eyes to the fact or fail to know that for several years men holding widely different views on other matters have vied with each other in throwing what was believed to be needed restrictions around the liquor traffic. This very law contains intrinsic evidence of the fact that it was designed so to do and that it was passed with this object, and such was believed to be its effect. This offense is not among those classed as malum in se—it is a conventional offense. Therefore, the question of intention cuts an inconsiderable figure, if indeed it is a matter to be considered at all. It is easily conceivable, and we believe such was the intent of the Legislature, that they had it in mind that they would impose this burden and responsibility on the owners of dram shops. It is apparent to me that they recognized that such owner who, in many, if not most instances, would be a man of some responsibility, and would be reluctant to in person commit an offense for which he might be fined and imprisoned and yet who might wink at offenses, or turn his back while offenses were being committed by irresponsible persons to whom such punishment would have little or no terror. Was it not the object of the law to get beyond and behind this irresponsible man and reach the owner who might, if he would, prevent such violations of the law? Was it not the intention of the Legislature to reach the man higher up, who could, if he would, keep his house in order and see that his business was conducted according to law? Such, I believe, to have been the intention of the Legislature. If it was their intention, the law contravenes no constitutional provision and should be given effect. Attention is called to what seems to be a conflict between sections 19 and 20 of the Act in question. There is, in fact, as I conceive, no conflict. Section 19 in substance provides that if one knowingly sells to a minor, etc., he shall be guilty. Section 20 in substance provides that wherever an act is done which is a violation of this law by an agent, it shall be held to be the act of the principal. As I conceive, these two provisions, read together, mean this: If the master, or principal, *knowingly* sells to a minor he is guilty; if he *sells,* or opens his place of business on Sunday, he is guilty. Here the word "knowingly" is omitted in reference to sales on Sunday for the reason that the law conclusively assumes that he knows the division of weeks and months into days, and knows when Sunday comes, but he would not necessarily know that a person to whom he sold whisky was a minor, and there must be some evi-

dence that he knew this fact before his guilt would attach. Now, the same thing is true of the servant; if he knowingly sells liquor to a minor he is guilty. If he sells at all on Sunday he is guilty. If his act in either case amounts to a violation of the law, by force of section 20, his act is deemed for all the purposes of the law to be the act of his principal. Of course, in every case it would be necessary to show agency. This would be an essential fact to be proven. This was a disputed question in this case and was an issue of fact to be found by the jury. The charge complained of has no reference to this issue of fact, but the only matter which I am discussing is the true meaning of section 20, where the evidence shows or raises the issue of agency.

Finally, whatever I might be inclined to think as to the wisdom of this law, and while I recognize that there is some doubt as to the correct application of this rule, it at last comes to the question as to whether by processes of differentiation, where the statute is clear, we shall strike it down and substitute our own discretion and preferences for the plain provisions of the law. Whether it is a good law or bad law, if the legislative intent can, in fairness, be ascertained, we ought to give it effect. While not free from some doubt about the matter, my best judgment is that it was intended by the Legislature, for the protection of society, of the youth of the land, and to prevent the desecration of the Sabbath, to provide that a man who engaged in this business must, at his peril, take effective means to put his house in order and see that the law is obeyed, and that if he failed to do this, he should pay the penalty which the law imposed. Not to sustain this law is to substitute our will and wish for a precise, definite, clear and unambiguous provision of the law. It is in effect to trim by construction, where no construction is needed, the definite provision of the law for one that we think more just, reasonable or humane. The doctrine for which I contend has received the specific indorsement of the eminent editors of both the Cyclopedias—it has received the unqualified indorsement of Mr. Black in his valuable work on Intoxicating Liquors —it has received, too, the commendation and support of that most learned and philosophic work of its class, Wharton on Criminal Law. So far as I have been able to find, there is no law writer in America who has ever ventured a contrary opinion. I am, as I always am, reluctant to place my own judgment in opposition to that of my brethren, but I am unwilling to see a law of my country slaughtered and stricken down in the court of last resort by a construction unreasonable, as I believe, and wholly at variance with the legislative intent. If this law is to be buried, at least, I will set up a monument to mark the place where it rests.

So believing, I find myself unable to agree with my brethren,

and think the matter of sufficient importance to make this statement of my views.

RAMSEY, JUDGE.—When I prepared my original dissenting opinion in this case we were in the closing hours of the last term of this court, the opinion being delivered on the day of adjournment. My treatment of the question then was necessarily hurried, and to some extent imperfect. Since then, and particularly during the summer vacation I gave the question careful consideration and investigation, such as was not possible when the question was before us in term time. I then had some little-doubt as to the true construction of article 20 of the Baskin-McGregor law, which was the subject of our consideration. The most mature reflection and the most diligent investigation since then has to my mind demonstrated beyond the shadow of a doubt that my original opinion was not only intrinsically sound and correct, but that I have merely followed the law as announced by every text writer in America, and by authorities both in England and in this country practically without exception.

As stated in my original opinion, Judge Davidson rests the decision of the case on the strong ground that inasmuch as practically the same statute had heretofore received consideration in Missouri, that in adopting same it would be assumed that the Legislature of this State intended that it should receive the same construction which had prevailed in the parent State. While the general rule stated by him is undoubtedly true, it is not the invariable rule. It was held in this State as early as the case of Snoddy v. Cage, 5 Texas, 106, in a great opinion by probably the most distinguished and learned man that ever sat on any court in Texas, that "The enactment of a law in terms similar to the provisions of a statute of a foreign country, does not involve the adoption of the construction which the courts of that country may have given to the provisions of the statute." In the course of the opinion he says: "It is urged that the exception operates as well against persons coming from abroad or removing to the country, as against citizens or residents going abroad and returning after a temporary absence; and several authorities are cited, in which similar provisions in the statutes of other States and nations have received this construction. I shall not attempt an exploration of the jurisprudence of foreign nations, or States, to ascertain the points of resemblance or difference between the section, and provisions to be found in their legislation. That such interpretation of provisions nearly similar, has been sanctioned by English and American courts, is unquestionable; and as reasoning, it commends itself, by all the considerations derived from the general approbation of those pure, enlightened and august tribunals. But their expositions have not the conclusive

force of authority. At the passage of this statute, Texas was an independent nation, possessing and exercising the plenary powers of sovereignty. She was subject to no laws except those emanating from her own Legislature; nor to the construction of any courts other than her own domestic tribunals. Among her other attributes of sovereignty, she still has authority to prescribe the times at which suits shall be brought, and actions barred within her own territory; and her laws for that purpose can receive their authoritative interpretation from her own courts alone. The accidental circumstance that the terms of the section in question may be similar to the provisions of foreign laws is immaterial. Many of our statutory regulations are similar to those found in the codes of other countries. Some of them are derived from the common law, others from the civil law system of jurisprudence. The expositions of many of these have been variant in different countries, and perhaps fluctuating in each of them; and at all events they can furnish no rule of action, except in the territorial limits of the State where they are made. For it can not be pretended that the exposition by a foreign court or jurisconsult, of a foreign law, can have any other force than that derived from its reason and justice. This will always be admitted and fully appreciated, although it can not be recognized as having the binding force of authority. (7 Mon. R. (Ky.), 70; Ewing v. Smith, 3 Dess. R. (S. C.), 459; Hard. R. (Ky.), 301; Reid v. Lamar, 1 Strob. Eq. R. (S. C.), 27.)"

Again, it is to be remembered that we have in this State a Penal Code complete and intended to be complete within itself. Article 10 of that Code is as follows: "Words which have their meaning specially defined shall be understood in that sense, though it be contrary to their usual meaning; and all words used in this Code, except where a word, term or phrase is specially defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed." This statute has by this court been uniformly followed, and it has more than once been said that, "The courts have nothing to do with the policy, expediency, propriety or wisdom of legislative enactments, and, in the construction of statutes, they will not be governed by considerations of convenience." Engelking v. Von Wamel, 26 Texas, 469; Davis v. State, 2 Texas Crim. App., 425; Stapp v. State, 3 Texas Crim. App., 138; Albrecht v. State, 8 Texas Crim. App., 216; Thompson v. State, 17 Texas Crim. App., 253; Smith v. State, 18 Texas Crim. App., 454.

We have in this State few provisions instituting a prima facie rule of evidence, and so far as I know none instituting a prima facie rule of guilt. Our Legislature had, however, in respect to sales of intoxicating liquors in local option precincts, made and

adopted one rule providing prima facie proof. With a view of ascertaining the meaning of the provision of article ·20 of the Baskin-McGregor law, let us place the provision unquestionably instituting a prima facie rule of evidence in parallel columns with section 20 now under consideration:

Article 402, Acts of 1903, as amended, so far as applicable, contains this provision:

"In prosecutions under this article where it is proven that there is posted up at the place where such intoxicating liquor is being sold or given away with the purpose of evading the provisions of the law, United States internal revenue liquor or malt license to anyone, it shall be prima facie proof that the person to whom such license is issued is engaged in the sale of intoxicating liquor."

Section 20, Baskin and McGregor law:

"Any sale, gift or other disposition of intoxicating liquors made to any minor without the permission or consent herein required, or to any habitual drunkard, or on any Sunday or election day by any agent, clerk or other person acting for any retail liquor dealer or retail malt dealer, or other person, shall be deemed and taken to be for all purposes of this Act, as the act of such retail liquor or retail malt dealer or other person."

Do these two provisions mean the same thing? Is black white? Is it conceivable that a Legislature in Texas which had before it the precedent of 1903, which in plain and unambiguous language had instituted a rule of prima facie evidence, should have found protection under the dome of the State capitol and spent probably ninety days in session to institute this same rule of prima facie evidence and found itself using the language of section 20 quoted above? If in passing the Act herein the Legislature had been without precedent and had sought for the benefit of future generations to hide away its intent from the painstaking inquirer, it could not have adopted more cryptic language to accomplish this result. The statute says that we shall in interpreting the Code construe the words in the sense in which they are understood in common language. Does the Legislature mean when it says that a sale by an agent for all the purposes of the act shall be deemed the sale of the owner, mean merely that it institutes a prima facie rule of guilt, when there is not and has never been in more than seventy years of our glorious history as a State and Republic a prima facie rule of guilt in this State or in this Republic? I do not know to what extent any court ought to be guided by authority, but it would seem that where the authorities are practically universal, where every textbook known, and where the courts of the highest repute are practically unanimous in their construction of a given statute,

and this statute, according to the plain import of words of ordinary significance, has an obvious and patent meaning, that we should long hesitate to undertake to read between the lines and to engraft on the statute or deduce from it a meaning which its language does not warrant. In addition to the authorities quoted, I desire to make this quotation from McClain on Criminal Law. In section 1237, vol. 2, after discussing the rule in the absence of a statute to the contrary, he uses this language: "But in accordance with the principle heretofore discussed by which one who carries on a business which is subject to statutory regulation is held accountable for any violation of the provisions of the statute in the conduct of such business without regard to his knowledge of or consent to such violation, it has been held by many courts that an employer carrying on the business of selling liquor is responsible for violations of the statute by his employes in conducting such business, even though such violation is contrary to his express directions; and this doctrine is especially insisted on where the illegality consists in the method of doing the business and not in the business itself; for instance, where, in the course of carrying on a lawful business of selling, the clerk or servant sells to a minor or an intoxicated person, even though directly forbidden by his employer to make such sales. And this doctrine is recognized in such cases even by courts which hold that the general liability for illegal selling can not be fixed upon the principal by an unauthorized act of his agent or servant."

In the recent case of State v. Gilmore, 13 American and English Annotated Cases, p. 321, it was held that where a statute commands that an act shall be done or omitted to be done which in the absence of such statute might be done or omitted without culpability, ignorance of the fact or condition contemplated by the statute does not excuse its violation, and that a liquor dealer forbidden by statute to sell liquor to a minor is liable for a sale to a minor although the sale is made without the knowledge of the dealer by his agent who is under instructions from the dealer not to sell to minors. In that case it was said: "The question is whether the act complained of was, in law, the respondent's act when committed by his servant. The State contends that the respondent is answerable for the act in accordance with the maxim, *Qui facit per alium facit per se.* The respondent claims that as the sale was made without his knowledge and contrary to his instructions, the employe alone is liable. Intent is not an essential ingredient of the offense charged. State v. Tomasi, 67 Vt., 312, 31 Atl., 780; State v. Perkins, 42 Vt., 399; State v. Ackerly, 79 Vt., 69, 64 Atl., 450, 118 Am. St. Rep., 940. In Com. v. Savery, 145 Mass., 212, 13 N. E., 611, the respondent sold an intoxicating liquid by mistake; held, that his belief that it was not intoxicating was no defense. The rule is, where a statute commands that an act be done or omitted,

which in the absence of such statute might be done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute will not excuse its violation." In the course of the opinion it is further said:

"In State v. Kittelle, 110 N. C., 560, 15 S. E., 103, 15 L. R. A., 694, 28 Am. St. Rep., 698, the court said that the licensee is bound to know that sales are made only to proper persons, and to this end he must employ persons whom he can trust; that he puts the employe in his place and gives him authority to make sales of liquor for his benefit, and should be responsible for his employe's acts.

"In McCutcheon v. People, 69 Ill., 601, the court said it was immaterial whether the sale was made by the respondent or an agent, and that if made by an agent the presumption is conclusive that he acted within the scope of his authority. 'When the agent . . . is set to do the very thing which, and which only the principal's business contemplates, namely, the dispensing of liquors to purchasers, the principal must be chargeable with the agent's violation of legal restrictions on that business. His gains are increased and he must bear the consequences. The fact that he has given orders not to sell to minors only shows a bona fide intent to obey the law, which all the authorities say is immaterial in determining guilt.' The court further reasoned that, as intent was not an ingredient in the offense, it logically followed that it was immaterial whether such orders were given or not; that he who does by another that which he can not lawfully do in person must be responsible for the agent's act; that in fact it is his act; that by setting up another to do his work while he occupies himself elsewhere he can not take the benefit of the agent's sales and escape the consequences of the agent's conduct. Noecker v. People, 91 Ill., 494, is to the same effect. This rule is held in Mogler v. State, 47 Ark., 109, 14 S. W., 473; Snider v. State, 81 Ga., 753, 7 S. E., 631, 12 Am. St. Rep., 350; Whitton v. State, 37 Miss., 379; Carroll v. State, 63 Md., 551, 3 Atl., 29; State v. Hartfiel, 24 Wis., 60; and doubtless in other States, the decisions of whose courts we have not examined.

"People v. Roby, 52 Mich., 577, 18 N. W., 365, 50 Am. St. Rep., 270, is cited by the court in the North Carolina case as sustaining the rule there contended for, the opinion having been delivered by Chief Justice Cooley. The case arose under a statute requiring that all saloons and other places where liquors were kept should be closed on Sunday. The respondent's saloon was opened on a Sunday morning for cleaning, when a person went in and obtained liquor of the clerk. The respondent was not present, but was in the house. The court said that the penalties of the statute were denounced against the person whose saloon was not kept closed, and that no

other fact was necessary to complete the offense. There was no evidence that the respondent assented to the room being opened, or desired it, nor was there evidence to the contrary. No instruction to the clerk not to open it was shown.

"Paducah v. Jones, decided by the Court of Appeals of Kentucky, October, 1907, reported in 104 S. W., 971, is, in its facts, like the Michigan case. The action was brought by the city upon a bond given by the respondent as a license to keep a coffeehouse and sell spirituous liquors therein, conditioned that he would observe the laws of the State and the ordinances of the city, one of which prohibited the sale of liquors on Sunday. Sales were made during the licensee's absence by his bartender and the licensee was held liable on his bond. The court quoted from Judge Cooley's opinion in People v. Roby, supra, where he said: 'Many statutes which are in the nature of police regulations . . . impose criminal penalties irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible.'

"The court then reasoned that if a criminal intent were necessary to constitute the offense of selling liquor on Sunday, or to a minor, or otherwise in violation of law, it would follow that the employer who had directed his clerk not to sell, or if the sale were made without his knowledge or consent, could not be criminally liable, as the criminal intent would be wanting. But in that case a police regulation had been violated, and the intent was wholly immaterial; that it was the act that the law looked at and not the intention of the perpetrator; that the character of the business carried on by the retail dealer in spirituous liquors and the temptation offered by it to violate the law render it peculiarly appropriate that the rule be applied to those engaged in the traffic. The court further said that when a person obtains a license to sell liquor, and for his own convenience and advantage employs other persons to conduct the business for him, he will be charged with responsibility for their acts and cannot shield himself upon the ground that their acts were contrary to his wishes, or in disobedience of his commands; that he assumes the risk of their acts in the business for which he employs them; that he must see to it that they do not violate the law if he would save himself from liability. The fact is emphasized that the employer has placed it within the power of his clerk to observe or disobey the law; that he has left it to his discretion and judgment. The court said that when he took his license, employed clerks, and took the benefit of their illegal sales, he could not escape liability upon the ground that he did not approve or authorize their acts; that the duty of observing the law imposed by the acceptance of the license attaches to all persons who by employment of the license conduct the business under it; that

their offense is his offense; that the law looks to the person intrusted with the authority and not to the subordinates he has seen fit to employ:

"It should be stated that in most of the States where the decisions last cited were rendered the statutes differed from our own. In State v. Kittelle stress is laid by the court upon the fact that the statute of North Carolina prohibited dealers in intoxicating liquors 'to sell directly or indirectly' to minors. In Illinois the language is, 'any person or persons by agent or otherwise.' In Georgia the statute is that 'no person, . . . by himself or another, shall sell,' etc., and in Dudley v. Sauthbine, 49 Ia., 650, 31 Am. Rep., 165, the court said that the statute expressly provided that a principal should be liable for sales made by his agent, the statute declaring it unlawful for any person, by agent or otherwise, to sell, etc. The statute of Maryland, under which the decision in Carroll v. State, was rendered, is like ours. In Wisconsin the prohibitive words are, 'knowingly or wilfully' sell to minors. In West Virginia the statute under which State v. Denoon, 31 W. Va., 122, 5 S. E., 315, was decided, provides that a sale of liquor by one person for another shall be deemed to be a sale by both and that both may be indicted and fined, either jointly or separately; and the court, while admitting a diversity of decisions upon this subject, based its opinion upon the statute referred to.

"We have referred quite extensively to decisions of other courts to show the diversity of views entertained by them upon this question. In deciding this case we must consider that it was the intention of the Legislature, when it enacted the license law, to prohibit and prevent the sale of liquors to minors and drunkards, as it was the purpose of the Michigan and Kentucky Legislatures to prevent saloons being opened on Sundays. Judge Cooley said that no other fact was necessary to complete the offense than that a saloon was open on Sunday; that the licensee could not be heard to say that it was opened by his employe in his absence and without his knowledge. The act aimed at can be committed only by reason of a license having been taken by the respondent. Sections 13, 14, and 15 of the license law carefully provide for the selection of licensees in whom confidence can be placed. A licensee can not be excused from criminal liability if he sells to a minor, however great the imposition practiced upon him by the person obtaining the liquor. Then can he delegate the conduct of the business to an agent with instructions not to sell to minors or drunkards and himself escape liability if his agent violates the law? We hold that he can not. The offense is complete when such sale has been made under and by virtue of the license and in the line of the respondent's business as licensee, and it is immaterial whether the act was done by the licensee or by his employee. When he engaged in the business he

assumed all the risk of his employes violating the condition of his license. Their acts were his acts when done in carrying on the licensed business."

There are many authorities which hold that a master is not criminally liable for the acts of his servants performed contrary to his instructions, although within the scope of the servant's employment; this is well settled. The courts in many jurisdictions, keeping this rule in mind, have held that in the absence of an express statutory provision to that effect, a person licensed by the State to sell intoxicating liquors is not criminally liable for illegal sales made by a servant without authority and against the positive instructions of the licensee. The following authorities in the absence of such a statute support this general rule: Patterson v. State, 21 Ala., 571; Seibert v. State, 40 Ala., 60; Daniel v. State, 149 Ala., 44, 43 So., 22; Barnes v. State, 19 Conn., 397; Pennybaker v. State, 2 Blackf. (Ind.), 484; Hipp v. State, 5 Blackf., 149, 33 Am. Dec., 463; Lauer v. State, 24 Ind., 131; Anderson v. State, 39 Ind., 553; Ihrig v. State, 40 Ind., 422; Hanson v. State, 43 Ind., 550; Wilson v. State, 19 Ind. App., 389, 46 N. E., 1050; Rosenbaum v. State, 24 Ind. App., 510, 57 N. E., 156. See also Wreidt v. State, 48 Ind., 579; Botkins v. State, 36 Ind. App., 179, 75 N. E., 298; State v. Stockman, 9 Kan. App., 888 mem., 58 Pac., 1006; Minden v. Silverstein, 36 La. Ann., 912; Com. v. Nichols, 10 Met. (Mass.), 259, 43 Am. Dec., 432; Com. v. Wachendorf, 141 Mass., 270, 4 N. E., 817; Com. v. Hayes, 145 Mass., 289, 14 N. E., 151; Com. v. Rooks, 150 Mass., 59, 22 N. E., 436; Com. v. Stevens, 153 Mass., 421, 26 N. E., 992, 11 L. R. A., 357, 25 Am. St. Rep., 647; Com. v. Joslin, 158 Mass., 482, 33 N. E. 653, 21 L. R. A., 449; Com. v. Stevens, 155 Mass., 295, 29 N. E. 508; Com. v. Riley, 196 Mass., 60, 81 N. E., 881, 10 L. R. A., N. S., 1122; State v. Mahoney, 23 Minn., 181; State v. Mueller, 38 Minn., 497, 38 N. W., 691; State v. Baker, 71 Mo., 475; State v. McGrath, 73 Mo., 181; State v. McCance, 110 Mo., 402, 19 S. W., 648; State v. Heinze, 45 Mo. App., 403; Moore v. State, 64 Neb., 557; State v. Corron, 73 N. H., 434, 6 Ann. Cas., 486, 62 Atl., 1044; People v. Utter, 44 Barb. (N. Y.), 170. See also Cullinan v. Burkhard, 93 App. Div. (N. Y.), 31, 86 N. Y. S., 1003, reversing 41 Misc. (N. Y.), 325, 84 N. Y. S., 825; Anderson v. State, 22 Ohio St., 305; Com. v. Johnston, 2 Pa. Super. Ct., 317; Com. v. Newhard, 3 Pa. Super. Ct., 215; Com. v. Titlow, 28 Pa. Co. Ct. (N. Y.), 341. See also Zeigler v. Com., 14 Atl., 237; State v. Burke, 15 R. I., 324, 4 Atl., 761; State v. Bohles, Rice L. (S. C.), 145; State v. Williams, 3 Hill L. (S. C.), 91; Neideiser v. State, 6 Baxt. (Tenn.), 499; Gaiocchio v. State, 9 Texas App., 388; Wadsworth v. State, 35 Texas Crim. Rep., 584, 34 S. W., 934; Pecaria v. State, 48 Texas Crim. Rep., 139, 90 S. W., 42; Sweeney v. State, 49

Texas Crim. Rep., 226, 91 S. W., 575; Holland v. State, 101 S. W., 1001; Gaddis v. State, 106 S. W., 1155. See also Gerstenkorn v. State, 38 Texas Crim. Rep., 621, 44 S. W., 503; Rawls v. State, 48 Texas Crim. Rep., 622, 89 S. W., 1071; Monela v. State, 70 S. W., 548.

However, as said in the valuable note to State v. Gilmore, supra, the rule is practically universal and the reported cases hold under a statute similar to ours that a licensee is criminally liable for an illegal sale of liquor by his servant, although such sale is made contrary to the former's instructions. In numerous other jurisdictions it is said: "Statutes prohibiting the sale of liquor by a licensee under certain circumstances have been construed as including sales by a servant against instructions, and it is well settled in these jurisdictions that the licensee is bound by the acts of his agent, done not only without his authority, but in violation of his instructions, in making an illegal sale of liquor. This rule is based upon the ground that criminal intent in acts of this nature is not necessary, and further upon the ground that a man who engages in business of this nature as a licensee of the State engages in it at his peril; that he must see that the requirements of the law are rigidly complied with, and that he is responsible for any failure of his agent to comply with those requirements. This rule is firmly established in England, Canada and America, as the following cases will demonstrate: Mullens v. Collins, L. R. 9 Q. B., 292, 43 L. J. M. C., 67, 29 L. T. N. S., 838, 22 W. R., 297; Rex v. Mc-Quarrie, 37 N. Bruns., 374; Austin v. Davis, 7 Ont. App., 478, overruling Hugill v. Merrifield, 12 U. C. C. P., 269; Reg. v. Howard, 45 U. C. Q. B., 346; Reg. v. Breen, 36 U. C. Q. B., 84. See also Reg. v. Williams, 42 U. C. Q. B., 462; Rex v. Conrod, 35 Nova Scotia, 79; Cloud v. State, 36 Ark., 151; Mogler v. State, 47 Ark., 109, 14 S. W., 473; Osborne v. State, 77 Ark., 439, 92 S. W., 406. See also Redmond v. State, 36 Ark., 58, 38 Am. Rep., 24; Wilson v. State, 64 Ark., 586, 43 S. W., 972; Beane v. State, 72 Ark., 368, 80 S. W., 573; Lehman v. District of Columbia, 19 App. Cas., 217; Loeb v. State, 75 Ga., 258; Snider v. State, 81 Ga., 753, 7 S. E., 631. See also Klug v. State, 77 Ga., 734; McCutcheon v. People, 69 Ill., 601; Noecker v. People, 91 Ill., 494; Banks v. Sullivan, 78 Ill. App., 298; compare Grosch v. Centralia, 6 Ill. App., 107; Dudley v. Sautbine, 49 Iowa, 650, 31 Am. Rep., 165; State v. McConnell, 90 Iowa, 197, 57 N. W., 707; compare State v. Hayes, 67 Iowa, 27, 24 N. W., 575; Paducah v. Jones, 104 S. W., 971, 31 Ky. L. Rep., 1203. See State v. Stewart, 31 Me., 515; State v. Brown, 31 Me., 520; State v. Wentworth, 65 Me., 234, 20 Am. Rep., 688; Carroll v. State, 63 Md., 551, 3 Atl., 29; People v. Blake, 52 Mich., 566, 18 N. W., 360; People v. Roby, 52 Mich., 577, 18 N. W., 365, 50 Am. Rep., 270, distinguishing People v. Hughes, 86

Mich., 180, 48 N. W., 945; People v. Kriesel, 136 Mich., 80, 98 N. W., 850; People v. Longwell, 120 Mich., 311, 79 N. W., 484, distinguishing People v. Metzger, 95 Mich., 121, 54 N. W., 639; People v. Parks, 49 Mich., 333, 13 N. W., 618; People v. Possing, 137 Mich., 303, 100 N. W., 396, 11 Detroit Leg. N., 249; Whitton v. State, 77 Miss., 379; Riley v. State, 43 Miss., 397; Gathings v. State, 44 Miss., 343; Teasdale v. State, 3 So., 245. See also Full-wood v. State, 67 Miss., 554, 7 So., 432; compare Kitrell v. State, 89 Miss., 666, 42 So., 609; State v. Kittelle, 110 N. C., 560, 15 S. E., 103; State v. Grant, 20 S. D., 164, 11 Ann. Cas., 1017, 105 N. W., 97; State v. Kinney, 113 N. W., 77; O'Donnell v. Com., 108 Va., 882, 62 S. E., 373; State v. Constantine, 43 Wash., 102, 86 Pac., 384, 117 Am. St. Rep., 1043; State v. Denoon, 31 W. Va., 122, 5 S. E., 315.

In support of this rule it is stated: "The reason underlying this view of the statutes is well stated by Carroll, Judge, in Paducah v. Jones, 104 S. W., 971, 31 Ky. L. Rep., 1203, as follows: ' 'If a criminal intent was necessary to constitute the offense of selling liquor on Sunday or to a minor or without license or in violation of law, it would follow that the employer who had directed his clerk not to sell, or if the sale was made without his knowledge or consent, could not be criminally liable as the intent necessary to complete the offense would be lacking; but there are a number of statutory offenses in which the law does not inquire into the intention of the person who violates them. His intention is not taken into consideration. It is totally immaterial whether it was good or bad. It is the act constituting the offense that the law looks at and punishes. . . . Therefore, we do not hesitate to say that the employer may be proceeded against criminally for the act of his clerk or agent who, in violation of law, sells or furnishes liquor acting within the scope of his employment, and this without reference to the instruction or direction given to him by the employer. When a person obtains a license from the State to sell liquor, and for his own convenience and advantage employs other persons to conduct the business for him, he will be charged with responsibility for their acts, and can not shield himself from prosecution upon the ground that what they did was contrary to his wishes, or in disobedience of his command. He assumes the risk of their acts in the business for which he has employed them; and, if he desires to save himself harmless, must see to it that his servants while acting for him do not violate the law.'

"In Noecker v. People, 91 Ill., 494, some of the sales testified to were made by clerks of the defendant. The court rejected testimony offered by defendant as to the instructions he gave his clerks in relation to the sale of intoxicating liquors. This was assigned as

error. The court held that the testimony was properly excluded, as the language of the statute was, 'Whoever, by himself, clerk, or servant, shall sell,' etc., shall be liable, and hence, as the testimony was uncontradicted that the defendant kept intoxicating liquors for sale, the defendant was responsible for the selling by his clerks, no matter what might have been his instructions to them. In People v. Longwell, 120 Mich., 311, 79 N. W., 484, the defendant was convicted of selling liquor contrary to the statute. (Pub. Acts, 1889, sec. 207.) His defense was that the sale was made by his clerk contrary to his general instructions. The statute provided that 'Any person who himself, or by his clerk, agent, or employe, shall violate any of the provisions,' etc. The court, citing and approving Judge Cooley's opinion in People v. Roby, 52 Mich., 577, sustained the conviction, observing that the statute in unequivocal language made the licensee responsible for the acts of his clerks in making illegal sales. In McCutcheon v. People, 69 Ill., 601, it was held that the presumption is conclusive that the servant in making the sale of intoxicating liquor acted within the scope of his authority.

"Evidence of the fact that the licensee had given directions to his agent to refuse to make illegal sales has been held to be admissible in mitigation of the punishment imposed by the law. Mogler v. State, 47 Ark., 109, 14 S. W., 473; State v. Kittelle, 110 N. C., 560, 15 S. E., 103, 15 L. R. A., 694, 28 Am. St. Rep., 698.

"The rule that the licensee is criminally liable has been applied in the cases of illegal sales made by a servant on Sunday against the consent and contrary to the instructions of the licensee. Lehman v. District of Columbia, 19 App. Cas. (D. C.), 217; Banks v. Sullivan, 78 Ill. App., 298; People v. Blake, 52 Mich., 566; People v. Roby, 52 Mich., 577, 18 N. W., 365; People v. Kriesel, 136 Mich., 80, 98 N. W., 850; People v. Lundell, 136 Mich., 303, 99 N. W., 12; People v. Possing, 137 Mich., 303, 100 N. W., 396, 11 Detroit Leg. N., 249; State v. Grant, 20 S. D., 164, 11 Ann. Cas., 1017, 105 N. W., 97; State v. Kinney (S. D.), 113 N. W., 77. See also People v. Welch, 71 Mich., 548, 39 N. W., 747; People v. Tolman, 148 Mich., 305, 111 N. W. 772.

"Likewise, the rule has been applied to sales to minors made by a servant against the instructions of the licensee. Edgar v. State, 45 Ark., 356; Mogler v. State, 47 Ark., 109, 14 S. W., 473; Loeb v. State, 75 Ga., 258; Boatright v. State, 77 Ga., 717; Johnson v. State, 83 Ga., 553, 10 S. E., 207; McCutcheon v. People, 69 Ill., 601; Carroll v. State, 63 Md., 551, 3 Atl., 29; Fahey v. State, 62 Miss., 402; State v. Kittelle, 110 N. C., 560, 15 S. E., 103, 15 L. R. A., 694, 24 Am. St. Rep., 698; State v. Constantine, 43 Wash., 102, 86 Pac., 384, 117 Am. St. Rep., 1043. See also Cloud v.

State, 36 Ark., 151; Southern Express Co. v. State, 1 Ga. App., 700, 58 S. E., 67.

"In Loeb v. State, 75 Ga., 258, the court in construing the Georgia statute, said: 'The act ex vi termini makes all persons connected with the sale or retailing of spirituous, intoxicating, or malt liquors responsible whenever a minor is furnished therewith, unless they have written authority from the parent or guardian of such minor, and it matters not whether the proprietor sells or furnishes the liquor directly by himself, or it is furnished by another in his employment. Whether he was present or not, or knew of the fact, or consented to it, he is, under this Act, guilty of criminal negligence, and is on that account liable to prosecution. His offense is complete, whenever it is shown that intoxicating drink was sold or furnished to a minor by anyone acting in his place of business in any capacity whatever, either as clerk, bartender, or otherwise.'

"In State v. Kittelle, 110 N. C., 560, 15 S. E., 103, 15 L. R. A., 694, 28 Am. St. Rep., 698, the statute providing that a licensee should be liable for a sale 'directly or indirectly,' it was held that the licensee was liable for an authorized and forbidden sale by an agent. In the course of the opinion the court, after reviewing the decisions of other States on this question, said: 'I think that the purpose of the Legislature in inserting the words 'directly or indirectly' in the statute, was not needlessly to notify the people that the court would tolerate no attempts at evasion by resorting to artifice, but to meet the very difficulty which seems to have suggested itself to law makers in other States, and expressed the same idea conveyed in Illinois by using the words 'By himself, clerk or servant', in Georgia 'by himself or another,' and in Arkansas by extending the criminal liability to every one who might be interested in the sale to a minor.'

"The rule that the licensee is criminally liable for an authorized sale of intoxicating liquors by his servant without the consent of the licensee and against his instructions, has also been applied in cases of unauthorized sales to habitual drunkards. Police Com'rs v. Cartman (1896), 1 Q. B. (Eng.), 655, 65 L. J. M. C., 113, 74 L. T. N. S., 726, 44 W. R., 637, 18 Cox C. C., 341, 60 J. P., 357; Mullinix v. People, 76 Ill., 211; Dudley v. Sautbine, 49 Ia., 650."

Buttressed and sustained by these authorities, uniform and practically universal; sustained further by the provisions of the law of my country, that words of common acceptation must be interpreted and understood according to their every-day meaning; sustained under conviction further of the fact that the Legislature of this State had wisdom enough to institute a prima facie rule of evidence in language so clear and plain that no man could mistake its meaning; that if they had meant merely to supply another prima facie rule, that they would not have used language in which prima

facie does not occur, in which the word evidence does not occur, but which on the contrary by terms as clear and as convincing as the commandment, "Thou shalt not steal," has made the guilt of the licensee depend upon the guilt of his servant, I can not without this further protest permit this decision to go unchallenged.